STATE OF HAWAII, Plaintiff-Appellee, *v.* ALICE YUKIKO YAW, Defendant-Appellant

NO. 5855

DECEMBER 20, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

486

OPINION OF THE COURT BY MENOR, J.

The defendant appeals from the judgment and sentence of the trial court, adjudging her guilty on two counts of promoting a dangerous drug in violation of HRS §§ 712-1242(1) and 712-1243(1).

The only issue for this court's determination is, whether the trial court erred in denying the defendant's pre-trial motion to suppress evidence consisting of heroin and barbiturates recovered from her residence by the police under a search warrant. The defendant contends that the police affidavits presented to the district court judge were insufficient to support the issuance of the search warrant.

In *Aguilar v. Texas*, 378 U.S. 108, 114 (1964), the Supreme Court held that where the affiant relies essentially on information obtained from an informant, the affidavit must set forth "some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable.' " The affidavit must reveal an adequate basis for the informer's conclusion regarding the location of the objects sought to be recovered, and must further demonstrate that the affiant's trust in the informer's credibility was warranted. *State v. Davenport*, 55 Haw. 90, 516 P.2d 65 (1973); *State v. Austria*, 55 Haw. 565, 514 P.2d 290 (1974).

It is clear from the affidavits in this case that one Bates was engaged in the business of peddling heroin. The police informant had personally observed Bates selling the drug, and pursuant to arrangements with the police, had himself purchased heroin from Bates.

Concerning the defendant's connection with the distribution of the drugs, the affidavits recite in substance:

That Bates lived at 3215 Ala Ilima Street, Apartment A-203, and the defendant at 1461 Ahonui Street, Building 7, Apartment D; that the defendant was also known as "Slim;" that "Slim" and the defendant were one and the same person; that at approximately 5:30 p.m. on September 10, 1974, the police informant advised one of the affiants that he had just observed Bates using the telephone, that he overheard Bates refer to the party at the other end of the line as "Slim," that he overheard Bates say to the other party that he was "coming over," that after Bates hung up he told the informant that he was out of heroin and was going to obtain more of the drug from "Slim;" that after receiving this information from the informant, the affiants initiated a surveillance of the defendant's residence at approximately 5:45 p.m. and saw Bates enter the defendant's residence at approximately 6:10 p.m.; that Bates was seen to leave sometime thereafter; that between 9:00-9:30 p.m. that same evening, the informer, pursuant to arrangements with the affiants, purchased heroin from Bates.

That at approximately 8:00 a.m. on September 12, 1974, the informant advised the police he had just been to Bates' apartment, that Bates told him that he was out of heroin but that he would be "scoring" from "Slim" sometime that morning; that both affiants then initiated surveillance of Bates' residence at approximately 8:45 a.m., that at approximately 10:35 a.m. they observed Bates leaving his apartment and followed him to the defendant's residence which Bates was seen to enter, that Bates left at approximately 11:10 a.m. and went back to his apartment; that at approximately 6:30 p.m. that same day, the informant, pursuant to arrangements with

the affiants, purchased heroin from Bates.

That at approximately 8:00 a.m. on September 14, 1974, the informer advised the affiants that he had just come from Bates' apartment, that Bates told him he had "only two left," that Bates told him that if he wanted some to return at 10:00 a.m. because he had just called "Slim;" that the affiants then initiated a surveillance of Bates and saw him leave his apartment at 8:45 a.m., that they followed him to the defendant's residence and saw him enter, that Bates left the defendant's apartment at approximately 9:10 a.m. and was followed back by the affiants to his own apartment.

An affidavit presented in support of an application for a search warrant may be based wholly, or in part, on hearsay. *State v. Davenport, supra; United States v. Harris,* 403 U.S. 573 (1971). We have before us, however, affidavits founded upon hearsay information which were in turn derived from hearsay. The essential facts connecting the defendant with the illicit traffic in drugs and supporting the inference that contraband was located at her residence came, not from the informant with whom the police affiants were in direct communication but from a source (Bates) with whom they had no immediate contact.

Such hearsay upon hearsay is not inherently defective and may, in a proper case, supply the probable cause requisite to the issuance of a search warrant. *United States v. Carmichael,* 489 F.2d 983 (7th Cir. 1973); *United States v. Smith,* 462 F.2d 456 (8th Cir. 1972). But before such information can be used for that purpose, the affidavits must establish that the two-pronged test of *Aguilar* has been met as to both the first and the second informants. Moreover, such information is to be viewed with caution, originating as it does from a source with whom the applicant for a warrant has had no direct connection. Obviously, the credibility and trustworthiness of the first informant assumes an even greater degree of importance when he is serving as the conduit for this type of information.

The affidavits clearly establish, and the defendant has conceded, that the test with respect to the police informant

has been met. She is also willing to concede that on the three occasions mentioned in the affidavits, Bates did inform the police informant that he would be going to the defendant's residence for narcotics and that the affiants did observe Bates entering and leaving her apartment on those occasions. We do not, therefore, have a situation where doubt could possibly exist as to whether the second informant actually made, to the first informant, the statements implicating the defendant.

The question, then, is whether the affidavits provided an adequate basis for the finding by the district court judge that contraband was *probably* located on the defendants premises, *Jones v. United States,* 362 U.S. 257 (1960); *Aguilar v. Texas, supra; State v. Kalai,* 56 Haw. 366, 537 P.2d 8 (1975), and whether they furnished a sufficient foundation for his conclusion that the source of this information (Bates) was credible. *Aguilar v. Texas, supra; State v. Davenport, supra.* The test in these situations is not proof beyond a reasonable doubt. *United States v. Harris,* 403 U.S. 573 (1971).

Pointing to the absence of any allegation that Bates did in fact obtain narcotics at her residence, the defendant argues that there is no support in the affidavits for a finding that she was dealing in drugs at her residence. This argument is premised upon the first prong of the *Aguilar* test. We think this initial requirement has been met. From the facts contained in the affidavits, the district judge was entitled to infer that the defendant was supplying Bates with the contraband at her premises. Bates intimated as much to the police informant, and the affidavits reveal that after each visit to the defendant's premises, Bates was able to sell heroin to the informant on the same day that he had earlier represented to the latter that he was out of the drug and needed to replenish his supply from the defendant.

The "credibility" or "reliability" prong of the *Aguilar* test is more troublesome but we find that it, too, has been satisfied. The affidavits reveal that Bates was an established drug dealer. He was not an anonymous second informant, insofar as the police and particularly the issuing judge were concerned. The police informant had, on a number of occasions, been present at Bates' apartment where he observed him

selling heroin to other customers. During the period from July to September, 1974, the police informant himself, pursuant to arrangements with the police, purchased heroin from Bates on four different occasions. From these facts, the district judge was entitled to conclude that a relationship of some trust existed between the parties. It was also reasonable for him to conclude that Bates could not have known at the time that the visitor to his apartment, who was also one of his customers, was in fact working with the police. Hence, there was no apparent reason for Bates to deliberately deceive the police informant regarding the identity of his supplier.

Bates' statements concerning the defendant were clearly not made for the specific purpose of implicating the defendant. They were entirely unsolicited. The initial reference to the defendant was made in a telephone call from Bates which the police informant overheard. He heard Bates address the party at the other end as "Slim," a term which the informant knew was a nickname by which the defendant was also called, and further heard Bates say that he was "coming over." After terminating the telephone call, Bates told the informant that he was out of heroin and was going to obtain more of the drug from "Slim." Bates' subsequent references to the defendant, as shown by the affidavits, were made solely to explain his own conduct and with prospective sales of heroin to the police informant in mind.

Bates' statements implicating the defendant were also admissions against his own penal interest, at least to the extent that they had a legitimate tendency to reveal the ongoing nature of his engagement, as well as the depth of his involvement, in the sale of contraband. Such admissions have been considered to be a relevent indicia of an informant's credibility. *United States v. Carmichael, supra. Cf. United States v. Harris, supra.*

Further evidentiary support for the inherent reliability of Bates' references to the defendant as his supplier may be found from the fact that he was followed and kept under surveillance by the police and was seen to enter and leave the defendant's premises at or about the time he told the police informant he would be going to the defendant for drugs. The

affidavits show that on the same day following each visit to the defendant's apartment, Bates was able to accommodate the police informant's request for heroin. Each time this was after he had told the informant earlier in the day that he was out of the drug and needed to replenish his supply from the defendant. No attempt was made by the police, through their informant, to purchase heroin from Bates after his third visit to the defendant's residence.

Where the facts and reasonable inferences from those facts are capable of supporting the district judge's finding of probable cause, his determination will be upheld on review, even though other inferences from those facts may support a different conclusion. *State v. Kalai, supra; State v. Austria, supra.* The district judge might have found the affidavits insufficient and withheld his warrant, but he did not, and however the contents of the affidavits may be viewed, we cannot say that the district judge in this case had very little or no basis for the issuance of his warrant.

Affirmed.

*Kazuhisa Abe* for defendant-appellant.

*Allan Chock,* Deputy Prosecuting Attorney (*Barclay E. MacDonald* on the brief) for plaintiff-appellee.