911 P.2d 1101

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Edward NAVAS and Melanie L. Navas,
Defendants–Appellees.**

No. 16695.

Intermediate Court of Appeals of Hawai'i.

June 2, 1995.

Certiorari Granted June 23, 1995.

James M. Anderson, Deputy Pros. Atty., City and County of Honolulu, on the briefs, Honolulu, for plaintiff-appellant.

Tae W. Kim, on the brief, Kaneohe, for defendant-appellee Edward Navas.

Amie Thompson, Deputy Public Defender, on the brief, Honolulu, for defendant-appellee Melanie L. Navas.

Before BURNS, C.J., and WATANABE, J., and HUDDY, Circuit Judge in place of ACOBA, J., disqualified.

BURNS, Chief Judge.

The State of Hawai'i (State) appeals the circuit court's December 7, 1992 Order Granting Defendants' Motion to Suppress Evidence seized from the residence of defendants Edward Navas (Edward) and Melanie L. Navas (Melanie), husband and wife. The dispositive question is whether the police officer's affidavit contained the minimum information necessary to allow the district court to decide that there was probable cause to issue the November 1, 1991 Search Warrant authorizing the search of defendants' residence. The district court's answer was yes. On defendants' motion to suppress, the circuit court's answer was no. We reverse the circuit court and affirm the district court.

## FACTS

The November 1, 1991 Search Warrant was issued on the basis of the following facts stated in the affidavit of Police Officer Bradfield Roberts (Officer Roberts or Roberts).

On October 7, 1991, the Narcotics Division of the Honolulu Police Department (HPD) received a tip from an anonymous caller that Edward, who lived at 151 Circle Drive, Wahiāwā, and worked as a prison guard with the rank of sergeant at the Halawa Correctional Facility (HCF), was selling crystal methamphetamine at the Stadium Mall, Pacheco Park, and the Wahiāwā Cornet Store. The anonymous caller stated Edward's residential and car telephone numbers and alleged that Edward conducted his crystal methamphetamine business through the car telephone. By October 30, 1991, HPD had verified that Edward lived at 151 Circle Drive, was employed at the HCF with the rank of sergeant, and his telephone numbers were unlisted. HPD also learned that Edward had been arrested a total of seven times during the period from 1971 through 1989: once in 1971 for a narcotics offense, once for Abuse of a Family Member, three times for traffic offenses, and twice for contempt of court.

On October 30, 1991, at approximately 3:00 p.m., Roberts telephoned Edward's residence. Roberts asked to speak to "Ed Navas." The adult male who answered affirmed that he was "Ed." Roberts identified himself as "Joe." Roberts inquired about buying "ice," a vernacular for crystal methamphetamine. In response, Edward asked how Roberts knew him. Roberts explained that he met Edward through a friend named "Clarence" when Edward sold them "ice" by the Wahiāwā Cornet Store. Edward then asked Roberts how much "ice" he wanted. Roberts replied $100 worth. Edward said that "it would be no problem," and suggested that they "meet someplace and [Edward] would take care of [Roberts]." Roberts informed Edward that he worked at the Navy Commissary cafeteria as a cook and that he was not able to leave but would check with his boss. Roberts gave Edward the HPD covert telephone number, and Edward said he would call back in ten minutes.

At approximately 3:15 p.m., Edward called back and Roberts informed him that he could not leave work until 9:00 p.m. Roberts suggested that his "girlfriend" could meet with Edward to "pick up the 'Ice.'" Edward agreed and said that he had to go to town first and would try to call back at about 5:30 p.m. However, Edward did not call.

At approximately 9:00 p.m., Roberts called Edward and reminded him that he had $100 and wanted to buy some "ice." Edward suggested they meet in the First Hawaiian Bank parking lot at 730 California Avenue, Wahiāwā. Edward asked what would be a good time to meet. When Roberts responded "9:30 p.m.," Edward agreed. The police observed Edward drive directly from his house to the First Hawaiian Bank parking lot.

At approximately 9:35 p.m., Roberts pulled into the First Hawaiian Bank parking lot. He saw a red 1977 Buick, bearing the license plate number AEJ-239, and was aware that Edward was its registered owner. The male sitting in the red Buick matched Edward's physical description. Upon greeting each other, Roberts recognized the voice as the one he had heard on the telephone during their previous conversations. Roberts observed a mobile telephone mounted on the center console of the red Buick. After a lengthy discussion on how Roberts knew Edward, Edward said that "he didn't deal with strangers and he did not know what [Roberts] was talking about." When asked why he had come to meet Roberts, Edward responded that "he just wanted to check [Roberts] out." Edward drove out of the lot at approximately 9:40 p.m. Edward did not meet with anyone before he arrived home. He used an indirect route to get there, utilizing side streets and routes through densely populated areas.

The next day, Officer Roberts viewed a photographic line-up and positively identified Edward as the suspect in the investigation.

On November 1, 1991, based on Officer Roberts' affidavit, the district court issued a search warrant for the residence owned by Edward and Melanie, and the red Buick owned by Edward. HPD executed the Search Warrant and seized crystal methamphetamine, marijuana, and drug paraphernalia from Edward's and Melanie's house. An indictment on February 18, 1991, charged

Edward with Count I, Promoting a Dangerous Drug in the Third Degree, Hawai'i Revised Statutes (HRS) § 712–1243 (1985); Count II, Unlawful Use of Drug Paraphernalia, HRS § 329–43.5(a) (Supp.1992); and Count III, Promoting a Detrimental Drug in the Third Degree, HRS § 712–1249 (1985). On April 22, 1992, Edward and Melanie filed motions to suppress evidence that had been seized by HPD pursuant to the search warrant.

On October 6, 1992, the circuit court held an evidentiary hearing, after which it orally granted the motions to suppress.

On December 7, 1992, the circuit court entered its Order Granting Defendants' Motion to Suppress Evidence (December 7, 1992 Order) in which it ordered the suppression of all evidence obtained from the search. This December 7, 1992 Order contained findings of fact (FOF) in relevant part as follows:

1. On October 7, 1991, the Narcotics Division of the Honolulu Police received an anonymous tip that Edward Navas, a sergeant at Halawa Correctional Facility, was selling crystal methamphetamine at Stadium Mall, Pacheco Park, and Cornet Store, and that he used a car phone to conduct the sale of drugs.

2. The anonymous informant did not tell the police how the anonymous informant obtained the information or when the alleged drug dealing of Edward Navas had occurred.

3. The only verifiable information provided by the anonymous caller was a home address, home phone number and mobile phone number for Edward Navas.

4. On October 30, 1991, Officer Bradfield Roberts called Edward Navas at his home and told Edward Navas that he was interested in buying crystal methamphetamine.

5. Edward Navas informed Officer Roberts that he was unable to meet with him at that time and that he would call Officer Roberts back in ten minutes.

6. Edward Navas never called Officer Roberts.

7. Officer Roberts called Edward Navas that night and convinced Navas to meet him that night at the First Hawaiian

Bank parking lot to sell him crystal methamphetamine.

8. When Officer Roberts met with Edward Navas at the First Hawaiian Bank parking lot, Edward Navas refused to sell any crystal methamphetamine to Officer Roberts and left.

9. At no time did Edward Navas indicate in any way to Officer Roberts that illegal drugs of any kind might be located in his home or car.

10. Based solely upon the information of the anonymous informant and the meeting between Officer Roberts and Edward Navas, the police applied to the Honolulu District Court for a warrant to search the home and car of Defendants Edward Navas and Melanie L. Navas.

11. The affidavit in support of the warrant contained no facts indicating or from which a reasonable inference could be made that Defendants kept contraband or evidence of a crime in any of the places to be searched.

\* \* \* \* \* \*

14. The warrant was executed on Defendants' residence and crystal methamphetamine, marijuana and drug paraphernalia were found and seized.

The December 7, 1992 Order also contained the following conclusions of law (COL):

1. The affidavit in support of the warrant failed to establish that there was an adequate basis for the informant's conclusions and that reliance upon the informant's credibility was warranted. *State v. Kanda,* 63 Haw. 36, 42, [620 P.2d 1072] [ (1980);] *State v. Austria,* 55 Haw. 565, 568 [524 P.2d 290] [ (1974).]

2. The affidavit failed to provide sufficient facts regarding the circumstances in which the informant obtained the information so that the court could make an "independent and informed determination of probable cause." *Kanda,* 63 Haw. at 43 [620 P.2d 1072] [ (1980).]

3. The affidavit in support of the warrant failed to establish any "facts so closely related to the time of the issue of the warrant as to justify a finding of probable

cause" that evidence of a crime or contraband would be found in the places to be searched at the time of the execution of the warrant. *Sgro v. United States*, 287 U.S. 206, 210 [53 S.Ct. 138, 140, 77 L.Ed. 260] (1932).

4. The affidavit in support of the warrant failed to establish any facts which would justify a finding of probable cause to believe that evidence of a crime or contraband was ever in the Defendants' home or car. *Zurcher v. Stanford Daily*, 436 U.S. 547, 557 fn 6 [98 S.Ct. 1970, 1977 fn 6, 56 L.Ed.2d 525] (1978); Comment, 28 U.Chi. L.Rev. 664, 687 (1961).

5. The search warrant was not supported by probable cause and was therefore invalid and the search and seizure based upon that warrant were illegal.

### DISCUSSION

In Hawai'i, it is unlawful to possess or distribute dangerous, detrimental, or harmful drugs. HRS §§ 712–1240 through –1249 (Supp.1992). " 'To distribute' means to sell, transfer, prescribe, give, or deliver to another, or to leave, barter, or exchange with another, or to offer or agree to do the same." HRS § 712–1240 (1985). Crystal methamphetamine is a dangerous drug because it is a schedule II substance. HRS §§ 329–16(e)(2) (Supp.1992), 712–1240.

The Fourth Amendment to the Constitution of the United States states as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, section 7, of the Constitution of the State of Hawai'i states as follows:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or

things to be seized or the communications sought to be intercepted.

■ Hawai'i Rules of Penal Procedure (HRPP) Rule 41 (1989) states in relevant part as follows:

**(b) Property Which May be Seized With a Warrant.** A warrant may be issued under this rule to search for and seize any (1) property that constitutes evidence of the commission of an offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing an offense. The term "property" includes documents, books, papers and any other tangible objects.

**(c) Issuance and Contents.** A warrant shall issue only on an affidavit or affidavits sworn to before the judge and establishing the grounds for issuing the warrant. If the judge is satisfied that the grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay evidence in whole or in part. Before ruling on a request for a warrant the judge may require the affiant to appear personally, and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit. . . .

\*  \*  \*  \*  \*  \*

**(e) Motion for Return of Property and to Suppress Evidence.** A person aggrieved by an unlawful search and seizure may move the court having jurisdiction to try the offense for the return of the property, or to suppress for use as evidence anything so obtained, or both. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial.

In the instant case, the district court decided that there was probable cause. On the question of probable cause that an offense is being or had been committed, the Hawai'i Supreme Court has stated that:

It has been firmly established by our decisions and those of the United States Supreme Court that probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense had been committed. It is clear that only the probability, and not a prima facie showing, of criminal activity is needed to establish probable cause.

*State v. Decano*, 60 Haw. 205, 209, 588 P.2d 909, 913 (1978) (citations omitted).

Under the Fourth Amendment, probable cause is established when the facts warrant a person of reasonable caution to believe that a crime is being committed. This requires more than a mere suspicion but less than a certainty. *State v. Decano*, 60 Haw. 205, 209, 588 P.2d 909, 913 (1978). Where the facts and reasonable inferences from those facts are capable of supporting a finding of probable cause, the district court's decision to issue a search warrant will be upheld even though other inferences from those facts may support a different conclusion. *State v. Yaw*, 58 Haw. 485, 491, 572 P.2d 856, 860 (1977).

*State v. Brighter*, 63 Haw. 95, 101, 621 P.2d 374, 379 (1980).[1]

Although written with reference to possession of stolen property, the following quote also applies to possession of the other items listed in HRPP Rule 41:

Direct evidence linking criminal objects to a particular site is not required for the issuance of a search warrant. A magistrate need only determine that a fair probability exists of finding evidence, considering the type of crime, the nature of items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property [or contraband].

*United States v. Jackson*, 756 F.2d 703, 705 (9th Cir.1985) (citations omitted).

■ The Hawai'i Supreme Court advocates a " 'commonsense and realistic,' " and not a " 'hypertechnical,' " reading of affidavits in connection with the determination of probable cause. *State v. Sherlock*, 70 Haw. 271, 275, 768 P.2d 1290, 1293 (1989) (quoting *State v. Kaukani*, 59 Haw. 120, 125, 577 P.2d 335, 339 (1978)).

The federal view is similar:

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

"[A]ll data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." *United States v. Anderson*, 453 F.2d 174, 175 (9th Cir.1971). If, before issuing the search warrant, the judge examines "the affiant and any witnesses he [or she] may produce," the transcript or recording of the hearing is a "part of the affidavit." HRPP Rule 41(c).

■ With respect to courts that decide motions to suppress evidence seized pursuant to a search warrant or appeals of orders granting such motions to suppress, the standard of review is relatively restricted.

It appears that the Hawai'i Supreme Court concludes that probable cause is established when the facts warrant an average person of reasonable caution to believe the relevant facts to the relevant degree.

---

1. It appears that the Hawai'i Supreme Court does not, as does W. LaFave, *Search and Seizure*, vol. 1, ch. 3, § 3.2(c) (2d ed.1987), agree that probable cause is established when the facts warrant a prudent, reasonable, cautious police officer, guided by his or her experience and training, to believe the relevant facts to the relevant degree.

[The reviewing court does] not review a [judge's] determination of probable cause de novo. That determination "should be paid great deference by reviewing courts[,]" and in close cases we should give preference to the validity of the search warrant. However, the magistrate must have a substantial basis for reaching a conclusion.

*United States v. Holzman*, 871 F.2d 1496, 1511 (9th Cir.1989), *overruled on other grounds* by *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (citations omitted). *Accord United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir.1993).

As noted above, HRPP Rule 41(e) authorizes the court deciding the motion to suppress to "receive evidence on any issue of fact necessary to the decision of the motion" to suppress. But, in light of the *Anderson* "four corners" rule quoted above, what issue of fact was necessary to the decision on the motion to suppress?

■ We agree with 3 Wright, *Federal Practice and Procedure: Criminal 2d* § 673 (1982), that the following are the six grounds upon which a motion to suppress can be made:

(1) that the property was illegally seized without warrant;

(2) the warrant is insufficient on its face;

(3) the property seized is not that described in the warrant;

(4) there was no probable cause for believing the existence of the grounds on which the warrant was issued;

(5) the warrant was illegally executed; or

(6) the facially valid affidavit contains false statements.

■ Specifically with respect to ground (6) above:

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that a defendant seeking an evidentiary hearing to determine whether a facially valid affidavit contains false statements must make a substantial preliminary showing that: (1) the affidavit contains intentionally or recklessly false statements and (2) the affidavit cannot support a finding of probable cause without the allegedly false information. If a defendant prevails at a *Franks* evidentiary hearing, evidence obtained on the basis of a search warrant issued on an affidavit containing material omissions or misrepresentations must be excluded. In *United States v. Stanert*, 762 F.2d 775 (9th Cir. 1985), *amended, reh'g denied*, 769 F.2d 1410 (9th Cir.1985), [the Ninth Circuit Court of Appeals] extended *Franks* to omissions of material facts and concluded that "the Fourth Amendment mandates that a defendant be permitted to challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead." *Id.* at 781.

*United States v. DeLeon*, 979 F.2d 761, 763 (9th Cir.1992).

In the instant case, the grounds for the motion to suppress were as follows:

n) At no time did Officer Roberts present documentation or information within the Warrant or Affidavit which would show that the Officer knew the informant to be reliable or that he had verified the accuracy of the incriminating information;

o) The affidavit further fails to reveal an adequate basis for the informer['[]s conclusion regarding the location of the objects to be sought[.]

In other words, the motion was based on Professor Wright's grounds (2) and (4). The question presented by ground (2) was whether the warrant was insufficient on its face. In light of the *Anderson* "four corners" rule quoted above, the question presented by ground (4) was whether the affidavit established probable cause. The circuit court, however, held an evidentiary hearing at which both Officer Roberts and Edward testified, and the circuit court entered findings of fact, some of which are clearly erroneous [2],

---

**2.** The State contends that the information listed in finding of fact (FOF) 3 was not "[t]he only verifiable information provided by the anonymous caller[.]" We agree. Honolulu Police Department officers verified Edward's name, his employment at the Halawa Correctional Facility as a prison guard, and his rank of sergeant. In addition, Roberts' conversations with Edward corroborated the allegation that Edward was selling crystal methamphetamine. Therefore, the words "The only" in FOF 3 are wrong.

The State contends that FOF 6 is wrong because Roberts called Edward, Edward said he

and conclusions of law. The record does not reveal what issue(s) of fact motivated the evidentiary hearing.

■ In essence, the circuit court decided that Officer Roberts' affidavit did not contain the minimum information necessary to allow the district court to decide that there was probable cause. On that question, the following precedent is relevant:

[A]n affidavit in support of a search warrant where the affiant relies upon an informer must reveal an adequate basis for the informer's conclusion regarding the location of the objects sought to be recovered and must further demonstrate that the affiant's trust in the informer's credibility was warranted.

In the more usual case where an informant's hearsay is used in an affidavit supporting a search warrant, the informant has a history of providing information to the police. Therefore, in many cases the affiant is able to provide a track record of the informant's reliability.

\* \* \* \* \* \*

It has never [been] suggested that an averment of previous reliability was necessary. Indeed, ... the inquiry is, as it always must be in determining probable cause, whether the informant's present information is truthful or reliable. While the history of prior dealings between an informant and the police can be an important element in establishing the reliability of the informant, the absence of such a history does not itself prove the informant unreliable. The magistrate is entitled to look to the underlying circumstances, including those portions of the information independently verified by police, and to other factors supporting the probable truthfulness of the information.

Corroboration by the law enforcement officer of ... various details in the informer's report could properly support the magistrate's conclusion that the informer was truthful. In *State v. Yaw*, [58 Haw. 485, 572 P.2d 856 (1977),] this court held that police surveillance which verified information provided by the informant supported a finding that the informant was reliable.

*State v. Sherlock*, 70 Haw. 271, 273–74, 768 P.2d 1290, 1291–92 (1989) (quotation marks, citations, and original emphasis omitted).

The use of prior arrests and convictions to aid in establishing probable cause is not only permissible, but is often helpful. This is especially so where, as in the matter presently before the court, the previous arrest or conviction involves a crime of the same general nature as the one which the warrant is seeking to uncover.

*United States v. Conley*, 4 F.3d 1200, 1207 (3d Cir.1993) (citations omitted).

Moreover, [when the district court judge's decision that there is probable cause is appealed, the Hawai'i Supreme Court] is particularly mindful of the rule that great deference should be accorded to a district court judge's finding of probable cause.

*State v. Decano*, 60 Haw. 205, 213, 588 P.2d 909, 915 (1978).

■ Officer Roberts relied on more than the informant's information. The informant's information motivated a police investigation. The investigation revealed that all of the verifiable parts of the informant's information were true. It also revealed that Edward's police record provided some support for the credibility of the informant's information. The information from the informant and from the police investigation led the police to contact Edward by telephone at

---

would call back in ten minutes, Edward called back in approximately ten minutes, and Roberts informed Edward that he was unable to meet at that time. We agree.

The State contends that the word "convinced" in FOF 7 is wrong. We agree. The record reflects a willing buyer and a willing seller at a location suggested by the seller.

The State contends that FOF 9 is wrong. Even though FOF 9 is limited to what Edward "indicate[d,]" we agree. From his home phone in Wahiāwā, Edward agreed to sell Roberts "ice,"

did not suggest the need for any delay, suggested and agreed upon the First Hawaiian Bank parking lot in Wahiāwā as the place of the sale, and drove directly from his home to that parking lot. From this information, a reasonable inference may be drawn that drugs were located in Edward's home and car.

The State contends that FOF 10 is wrong. We agree. The police also relied on their corroboration of the informant's information and on the telephone conversations between Roberts and Edward.

Edward's residence to arrange a drug sale from Edward to Officer Roberts acting in an undercover capacity. All three telephone contacts supported the credibility of the informant's information. In the first telephone contact, Edward agreed to sell crystal methamphetamine to Officer Roberts. Edward initiated the second telephone contact. In the third telephone contact, Edward impliedly agreed to sell drugs to Officer Roberts and suggested the meeting place. The police observed Edward drive directly from his residence to the meeting place. After conversing with Officer Roberts, Edward decided not to consummate the drug transaction he had previously agreed to and the police observed his return to his residence via an indirect route. It is a reasonable conclusion that Edward was ready, willing, and able to close the transaction, but something happened that caused him to change his mind. The facts known to the police, especially their telephone conversations with Edward and the fact that Edward went from his residence to the meeting and returned to his residence via an indirect route after the meeting, led the police to reasonably believe that Edward had drugs in his car and/or residence. The information from the informant, the police investigation, the telephone and in-person contacts between the police and Edward, and the observation of Edward's movements by the police, led Officer Roberts to reasonably believe that drugs and drug paraphernalia were located in Edward's and Melanie's residence and in Edward's car and to seek a search warrant authorizing a search of Edward's and Melanie's house and Edward's car.

Mindful of the essential elements of probable cause and the rules that the duty of the reviewing court is simply to ensure that the district court had a substantial basis for deciding that probable cause existed and that great deference should be accorded to a district court judge's finding of probable cause, we affirm the district court's finding of probable cause.

## CONCLUSION

Accordingly, we reverse the circuit court's December 7, 1992 Order Granting Defendants' Motion to Suppress Evidence and we affirm the district court's November 1, 1991 search warrant.