72 P.3d 485

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Benjamin John DETROY,
Defendant–Appellant.**

No. 22570.

Supreme Court of Hawai'i.

July 8, 2003.

Deborah L. Kim, Deputy Public Defender, on the briefs, for defendant-appellant.

James M. Anderson, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, and ACOBA, JJ., and Circuit Judge MILKS, Assigned by Reason of Vacancy.

Opinion of the Court by ACOBA, J.

We hold that the search warrant herein was not supported by probable cause inasmuch as (1) the credibility and reliability of the anonymous tip concerning marijuana growing was not established, (2) the use of a thermal imager to obtain information concerning heat within the apartment of Defendant–Appellant Benjamin John Detroy (Defendant) constituted an unreasonable search, and (3) the remaining matters submitted were insufficient to justify the issuance of the subject warrant. Accordingly, the May 27, 1999 order of the Circuit Court of the First Circuit [1] (the court) denying Defendant's motion to suppress items seized in the execution of the warrant must be vacated and the May 4, 1999 judgment reversed.

## I.

After a jury trial Defendant was convicted of Promotion of Marijuana in the First Degree, Hawai'i Revised Statutes (HRS) § 712–1249.4(1)(c) (1993) [2] and Unlawful Use of Drug Paraphernalia, HRS § 329–43.5(a) (1993).[3] Defendant was found not guilty of

---

1. The Honorable Dexter Del Rosario presided over Defendant's motion to dismiss alleging violations of due process and equal protection, motion to suppress items of evidence, and the trial.

2. HRS § 712–1249.4(1)(c) provides as follows: "**Commercial promotion of marijuana in the first degree.** (1) A person commits the offense of commercial promotion of marijuana in the first degree if the person knowingly: ... (c) Possess-

es, cultivates, or has under the person's control one hundred or more marijuana plants[.]"

3. HRS § 329–43.5(a) provides as follows:
**Prohibited acts relating to drug paraphernalia.**
   (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack,

Count III, Promoting a Detrimental Drug in the Third Degree, HRS § 712–1249. On appeal, he argues, *inter alia*, that the court erred in (1) concluding that the warrantless use of a thermal imager did not amount to an unreasonable search and (2) finding that the affidavit in support of the search warrant established probable cause for a search of Defendant's apartment for marijuana. We conclude that Defendant was correct with respect to his first and second arguments and thus, we need not reach his remaining points.[4]

## II.

On or about December 16, 1997, Honolulu Police Department (HPD) officer Jonathan Wong (Wong) applied for and received a warrant from a district court judge to search Defendant's apartment for marijuana and other contraband.[5] In support of the warrant request, Wong submitted three photographs depicting the exterior of Defendant's apartment, an Affidavit in Support of Search Warrant (Affidavit), and two attachments, designated as Facts Establishing Probable Cause and Opinion of [the] Affiant. Apparently, based upon these submissions, Wong's request for a search warrant was granted. HPD officers executed the warrant on Defendant's apartment or about December 17, 1997, and recovered marijuana plants and some seedlings, sprouts, seeds, bagged vegetable matter, and some drug paraphernalia.

> store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

4. Defendant also argues that the court erred in (1) giving a prejudicially erroneous and misleading jury instruction which purported to define the necessity defense, (2) improperly restricting defense counsel from eliciting testimony from the medical experts regarding the dangerous side effects of Defendant's medications, (3) finding that Defendant's use of marijuana for medical purposes in his home is not a constitutionally protected activity, and (4) failing to dismiss Count I as violating the rule set forth in *State v. Modica*, 58 Haw. 249, 250–251, 567 P.2d 420, 421–422 (1977).

The Affidavit referred to a tip by way of a telephone call to Wong on or about November 24, 1997, from an anonymous informant (Informant or, according to context, "he"). Informant's identity never became known to Wong. The call indicated the location of Defendant's apartment and that Defendant may be growing marijuana there. Informant related that he had seen Defendant and another man carry a carbon dioxide ($CO_2$) tank and other equipment into Defendant's apartment, but Informant was unable to describe the other equipment. No sounds of machinery were heard by Informant and he did not believe that Defendant was running a home business.

Informant related that primarily in the early morning hours, the odor of marijuana plants was being emitted from Defendant's apartment. Informant claimed to be a frequent past user of marijuana and, therefore, was familiar with its appearance and odor. On two occasions Informant observed through Defendant's open windows, in the room that contained an air conditioner, a very bright white light. The tops of marijuana plants were also observed in the same room. Informant described the light as being emitted from "growing lights." The windows were louvered, and probably tinted or covered, as light in this room could only be seen when the louvers were opened.

5. Hawai'i Rules of Penal Procedure (HRPP) Rule 41(a) (1995) provides as follows: "(a) Authority to issue warrant. A search warrant authorized by this rule may be issued by any district or circuit judge within the circuit wherein the property sought is located. Application therefor should be made to a district judge wherever practicable." HRPP Rule 41(c) (1995) provides in pertinent part as follows:

> (c) *Issuance and contents.* A warrant shall issue only on an affidavit or affidavits sworn to before the judge and establishing the grounds for issuing the warrant. If the judge is satisfied that the grounds for the application exist or that there is probable cause to believe that they exist, he [or she] shall issue a warrant identifying the property and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay evidence in whole or in part.
> The Honorable Marcia J. Waldorf granted the request for the search warrant.

Defendant was described by Informant as a Caucasian male, five feet eleven inches to six feet tall, weighing one hundred eighty to two hundred pounds, with blue eyes and blond hair, and slightly balding, with a small pony tail. Informant also believed that Defendant was unemployed because he was always home, and did not have a car.

### III.

On or about November 25, 1997, at approximately 11:00 a.m., Wong located Defendant's apartment. Wong observed the louvered windows, but the louvers on the window with the air conditioner were closed. The window with the air conditioner was missing one louver, and in its place was a built in hollow wood type frame, which Wong believed could be for ventilation. Defendant's front window and drapes were open, and Wong could see that a light was on inside the unit, which was not unusually bright. Wong noted that all apartments in the building were equipped with air conditioners.

Defendant's name was observed on the apartment's mailbox. Later that day, at approximately 8:00 p.m., Wong returned to Defendant's apartment. He observed that lights were on in all the windows of Defendant's apartment, except the window with the air conditioner. All of the windows in Defendant's apartment were closed and the curtains on Defendant's front window were closed. Wong could not determine whether Defendant's air conditioning unit was on at the time.

Wong obtained the electric utility records for Defendant's apartment and two similar neighboring apartments in Defendant's building from Hawai'ian Electric Company. Wong determined that all three apartments were two-bedroom units with air condition-ers. Defendant was the registered customer for his apartment. The utility records revealed that Defendant's average kilowatt usage per month from January 1997 to November 1997, was between 1200 to 1600 kilowatts. For the same time period, one of the other apartments averaged between 219 to 552 kilowatts per month, and the other apartment averaged between 511 to 723 kilowatts per month. Wong noted that the larger kilowatt usage of one of the comparison apartments might be attributable to that customer's status as a housewife.

Via a computer check, Wong determined that Defendant was described as a forty-three year old Caucasian male, six feet tall, weighing two hundred pounds, with blue eyes and blond hair. Defendant had been arrested on Maui on or about April 4, 1997, for theft in the fourth degree, and in Honolulu on or about February 7, 1991 and July 23, 1992, for various drug offenses. No convictions were noted.

According to the Affidavit, on or about December 16, 1997, at approximately 2:30 a.m., Wong returned to Defendant's apartment and aimed a thermal imager [6] at the rear bedroom area of Defendant's apartment. Wong did not physically cross any fence lines or enter any curtilage area while using the thermal imager. Based upon Wong's prior training and experience with the thermal imager, he concluded that the surface temperature of Defendant's structure was significantly higher than that of similar adjacent structures.

Wong indicated he had received training by HPD and the federal Drug Enforcement Agency and other related agencies, and had participated in numerous drug investigations, which led to arrests for various drug offenses.[7]

---

**6.** In *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), a thermal imager was described as follows:

Thermal imagers detect infrared radiation, which virtually all objects emit but which is not visible to the naked eye. The imager converts radiation into images based on relative warmth-black is cool, white is hot, shades of grey connote relative differences; in that respect, it operates somewhat like a video camera showing heat images.

*Id.* at 29–30, 121 S.Ct. 2038. It detects heat emitted from the surface of the object on which the imager is focused.

**7.** In the "Opinion of Affiant" portion of the affidavit, Wong stated that indoor cultivation of marijuana requires grow lights, which emit very bright light and are to be kept on twelve to sixteen hours per day. As a result, the room temperature rises. Blowers or exhaust fans are used to recycle stale air with fresh air and to help eliminate odors. This equipment, especially

# 18

## IV.

On or about June 9, 1998, Defendant filed a motion to suppress evidence, arguing that there was no probable cause for the search warrant to issue because: (1) the anonymous tip received by the police was false and never independently verified; (2) the police use of the thermal imager allowed them to gather information regarding the interior of Defendant's apartment, which they otherwise could not have gathered without a search warrant; (3) Defendant's high electrical usage, in itself, would not lead a reasonable person to believe a crime was being committed; and (4) Defendant's arrest record, which contained no convictions, was insufficient to establish probable cause. Defendant's motion to suppress was denied, and Defendant was thereafter convicted.

## V.

■ This court has established that "[u]nder the safeguard[ ] of ... Article I, [section 7] of Hawai'i's Constitution, a search warrant may not issue except upon a finding of probable cause supported by oath or affirmation." *State v. Decano*, 60 Haw. 205, 209, 588 P.2d 909, 913 (1978). On appeal, this court reviews "the determination of probable cause for the issuance of a search warrant" under the *de novo* standard of review. *State v. Navas*, 81 Hawai'i 113, 123, 913 P.2d 39, 49 (1996) [hereinafter *Navas II*]. Generally, " '[a]ll data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath.' " *State v. Navas*, 81 Hawai'i 29, 34, 911 P.2d 1101, 1106 (App. 1995) [hereinafter *Navas I* ] (quoting *United States v. Anderson*, 453 F.2d 174, 175 (9th Cir.1971)).

■ "Probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed."

*Navas II*, 81 Hawai'i at 116, 913 P.2d at 42. "This requires more than a mere suspicion but less than a certainty." *Navas I*, 81 Hawai'i at 34, 911 P.2d at 1106 (quoting *State v. Brighter*, 63 Haw. 95, 101, 621 P.2d 374, 379 (1980) (internal citations omitted)).

The facts submitted can be summarized in pertinent part as follows: (1) the anonymous tip; (2) three photographs of the exterior of Defendant's apartment; (3) Wong's observations; (4) electrical usage records of Defendant's apartment; (5) a computer check of Defendant; (6) information obtained from the thermal imager.

## VI.

■ "Probable cause for [the] issuance of a search warrant may, of course, rest on reasonably trustworthy hearsay." *Decano*, 60 Haw. at 210, 588 P.2d at 914; *see also* HRPP Rule 41(c) ("The finding of probable cause may be based upon hearsay evidence in whole or in part."). But, when hearsay, such as an anonymous tip, is used to establish probable cause, this court applies the two prong test announced in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and expounded upon in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *See, generally, Decano*, 60 Haw. at 210, 588 P.2d at 913–14. Under this test, the affidavit must contain

> some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the *underlying circumstances* from which the officer concluded that the informant, whose identity need not be disclosed ... was "credible" or his information "reliable."

*State v. Davenport*, 55 Haw. 90, 93, 516 P.2d 65, 68 (1973) (quoting *Aguilar*, 378 U.S. at 114, 84 S.Ct. 1509) (emphasis added) (ellipsis points in original); *see also Spinelli*, 393 U.S. at 413, 89 S.Ct. 584. But, "*when an informer's tip is a necessary element of probable cause* in a search warrant, *its adequacy must*

---

the grow lights, utilizes a large amount of electricity. Because the plants require CO2 to grow, a CO2 tank is frequently used to reduce the oxygen level in a room. Wong further explained that paraphernalia, records, and other evidence

are normally recovered during investigations. We note that, in determining probable cause, the affidavit "must be judged by the facts it contains." *State v. Davenport*, 55 Haw. 90, 97, 516 P.2d 65, 70 (1973) (emphasis added).

turn on whether the tip alone passes the *Aguilar* test." *Davenport*, 55 Haw. at 94, 516 P.2d at 68–69 (emphasis added). In *Davenport*, this court noted that the United States Supreme Court indicated that "*the observation by the police in Spinelli of at best vaguely suspicious behavior by the defendant did not serve to remedy the fundamental deficiencies of the affidavit* with respect to the informer's tip." *Id.* at 94, 516 P.2d at 69 (emphasis added). "The informer's report[, then,] must first be measured against *Aguilar*'s standards so that its probative value can be assessed." *Spinelli*, 393 U.S. at 415, 89 S.Ct. 584. "If the tip [alone] is found inadequate under *Aguilar*, the other allegations which corroborate the information contained in the hearsay report should then be considered." *Id.*

Defendant concedes that the first prong has been established. *See e.g. Davenport*, 55 Haw. at 95, 516 P.2d at 70 (holding that "[u]nder the first, or 'underlying circumstances,' prong of the *Aguilar* test, the affidavit clearly passes constitutional muster since it relates that the basis of the informer's conclusion that illicit drug activity was being conducted at the specified location was his personal observations thereof" (citations omitted)). Therefore, we first consider Informant's allegations exclusively in assessing whether the second prong of the *Aguilar* test has been satisfied. *See id.* We conclude that the affidavit fails to establish that Informant was credible or reliable.

## VII.

In *Decano*, this court noted that, "[i]n the typical police informer situation, a showing of informer credibility or reliability of the given information is required in order to prevent searches based upon an unknown informer's tip that may represent nothing more than idle rumor or irresponsible conjecture." 60 Haw. at 211, 588 P.2d at 914. "To restate the obvious, a tip is only as good, or as worthless, as its source." *State v. Joao*, 55 Haw. 601, 604, 525 P.2d 580, 583 (1974). ▮▮▮ While an "identified informer would generally be entitled to greater credibility than a 'faceless' informer would be[,]" this Informant falls within the later category. *Id.*

Hence, "[i]f the telephone call is truly anonymous, the informant has not placed his credibility at risk and can lie with impunity." *Florida v. J.L.*, 529 U.S. 266, 275, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (Kennedy, J., concurring). This case is to be contrasted with *Davenport*. In *Davenport*, the confidential informant was found credible because "the informer had provided [the] officer … with accurate information in the past on at least eleven occasions[,]" which led to arrests and prosecutions. 55 Haw. at 96, 516 P.2d at 69–70. Also, in *State v. Texeira*, 50 Haw. 138, 433 P.2d 593 (1967), this court upheld a warrantless arrest based upon an informant's telephone call because "there was both verification of every fact the informer communicated to [the] officer …, and a history of past reliability." *Id.* at 141, 433 P.2d at 596. Here, unlike in *Davenport* or *Texeira*, the credibility of the Informant was not supported by past experience showing he provided accurate information leading to arrests and prosecutions. *See id.* Furthermore, unlike in *Texeira*, Wong was unable to verify many facts provided by Informant. *See id.* Wong could not discern the odor of marijuana plants, or observe such plants, the equipment, or the bright lights in order to verify the reliability of Informant's information.

Under the circumstances here, the "anonymous tip 'is devoid of any of the underlying circumstances from which [an] officer can conclude that the informant was credible and his information reliable.' " *State v. Phillips*, 67 Haw. 535, 540, 696 P.2d 346, 350 (1985) (quoting *State v. Ward*, 62 Haw. 509, 511, 617 P.2d 568, 570 (1980)). Based upon the foregoing, we conclude that Informant's tip, standing alone, does not meet the *Aguilar* and *Spinelli* test as it contains no showing of the credibility of Informant or the reliability of his information. However, this does not end the analysis, for "other allegations which corroborate the information contained [within the hearsay report should then be considered." *Spinelli*, 393 U.S. at 415, 89 S.Ct. 584.

## VIII.

▮▮▮ "[T]he tip, … when … corroborated by independent sources, [must be] as

trustworthy as a tip which would pass Aguilar's tests without independent corroboration." *Id.* "Corroboration by [a] law enforcement officer of ... various details in the informer's report could properly support the magistrate's conclusion that the informer was truthful." *State v. Sherlock*, 70 Haw. 271, 274, 768 P.2d 1290, 1292 (1989). Wong ascertained that (1) Informant's description of the apartment and windows was accurate,[8] (2) Informant's description of Defendant substantially matched the computer information he accessed, and (3) lights could be observed throughout the apartment except for the room with the air conditioner.

■ But, as previously indicated, Wong was unable to verify the incriminating aspects of the tip. Wong failed to (1) detect the odor of marijuana plants, (2) observe bright lights in Defendant's back room, (3) see the tops of marijuana plants in Defendant's apartment, or (4) discover equipment such as the $CO_2$ tank. The "[m]ere confirmation of innocent static details in an anonymous tip does not constitute corroboration." *United States v. Clark*, 31 F.3d 831, 834 (9th Cir.1994) (citing *United States v. Mendonsa*, 989 F.2d 366, 369 (9th Cir.1993)). In this regard, the United States Supreme Court has related that identification of a defendant is not sufficient:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that *a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.*

*J.L.*, 529 U.S. at 272, 120 S.Ct. 1375 (citation omitted) (emphasis added).

Accordingly, to the extent corroborated, the tip did not provide probable cause. But, other information was contained within the Affidavit, such as that obtained from the thermal imager, electrical usage records, Wong's observations of what he believed to be a makeshift vent, and Defendant's arrest record. *See e.g., Spinelli*, 393 U.S. at 418, 89 S.Ct. 584 (noting that while the "tip—even when corroborated to the extent indicated—was not sufficient to ... [establish] probable cause[, t]his is not to say that the tip was so insubstantial that it could not properly have counted in the ... determination[; r]ather, it needed some further support").

## IX.

■ As to the thermal imager device, Defendant contends that the use of the device to detect heat emanating from his apartment constituted a warrantless search prohibited by the Fourth Amendment to the United States Constitution[9] and article I, section 7 of the Hawai'i State Constitution.[10] This involves a question of law, which is "reviewed under the right/wrong standard." *State v. Pattioay*, 78 Hawai'i 455, 459, 896 P.2d 911, 915 (1995) (citation omitted).

The United States Supreme Court squarely addressed this issue in *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), and held that, when "the Government uses a device that is not in

---

8. Aside from the fact that Wong took three photographs of the exterior of the apartment, the significance of the photographs is not indicated in the Affidavit.

9. The Fourth Amendment of the Constitution of the United States provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized.

10. Article I, section 7 of the Hawai i State Constitution provides as follows:

> The right of the people to be secure in there persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

general public use, [such as a thermal imager,] to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' [under the Fourth Amendment] and is presumptively unreasonable without a warrant." *Id.* at 40, 121 S.Ct. 2038.

In *Kyllo*, an agent of the United States Department of the Interior suspected that marijuana was being grown in the home belonging to Kyllo. *See id.* at 29, 121 S.Ct. 2038. The agent knew that "[i]ndoor marijuana growth typically requires high-intensity lamps." *Id.* at 27, 121 S.Ct. 2038. The agent and another person used a thermal imager to scan Kyllo's home. *See id.* Kyllo's property was never entered while performing the scan. *See id.* at 30, 121 S.Ct. 2038. "The scan showed that the roof over the garage and a side wall of [Kyllo's] home were relatively hot compared to the rest of the home and substantially warmer than the neighboring homes in the triplex." *Id.* A warrant was issued to search Kyllo's home "[b]ased [up]on tips from informants, utility bills, and the thermal imaging" scan. *Id.* More than one hundred marijuana plants were recovered. *See id.* Kyllo "unsuccessfully moved to suppress the evidence seized from his home and then entered a conditional guilty plea." *Id.* at 27, 121 S.Ct. 2038.

Kyllo appealed to the Court of Appeals for the Ninth Circuit. *See id.* at 31, 121 S.Ct. 2038. It ultimately held that Kyllo had not shown a subjective expectation of privacy in the heat being emitted because he made no attempt to conceal it, and that even if he had, society would not recognize such expectation as reasonable, inasmuch as the thermal imager "did not expose any intimate details of Kyllo's life[.]" *Id.* (internal quotation marks and citation omitted). On certiorari, the United States Supreme Court held that the warrantless use of the thermal imager was an unreasonable search under the Fourth Amendment. *See id.* at 40, 121 S.Ct. 2038. It reasoned that the use of "sense-enhancing technology [to obtain] any information regarding the interior of the home that could not otherwise have been obtained without physical intrusion . . ., constitutes a search— at least where (as here) the technology in

question is not in general public use." *Id.* at 34, 121 S.Ct. 2038 (internal citations omitted). According to the Court, "the Fourth Amendment draws 'a firm line at the entrance to the house,' " *id.* at 40, 121 S.Ct. 2038 (quoting *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)), and "[i]n the home . . . *all* details are intimate details, because the entire area is held safe from prying government eyes." *Id.* at 37, 121 S.Ct. 2038 (emphasis in original).

In using the thermal imager, Wong similarly sought to measure the amount of heat in Defendant's apartment. Clearly, this was done to acquire information regarding the interior of Defendant's apartment. As mentioned in *Kyllo*, "any information regarding the interior of the home that could not otherwise have been obtained without physical intrusion into a constitutionally protected area, constitutes a search. . . ." *Id.* at 34, 121 S.Ct. 2038 (internal citations omitted). Furthermore, contrary to the State's argument that no intimate details of the home were revealed, *Kyllo* held that when dealing with the home, "*all* details are intimate details, because the entire area is held safe from prying government eyes." *Id.* at 37, 121 S.Ct. 2038 (emphasis in original). Consequently, the warrantless use of the thermal imager to measure heat emanating from the interior of Defendant's apartment was a prohibited search that violated the Fourth Amendment; as such, the information gained must be excluded in the establishment of probable cause.

### X.

We recognize that the Court establishes nationwide minimum standards with respect to guarantees in the federal Bill of Rights applicable to the states through the Fourteenth Amendment. Thus, in the present case, the *Kyllo* decision is dispositive with respect to any federal constitutional claim. We hold, additionally, that the same result would be reached on independent state constitutional grounds under article I, section 7 of the Hawaiʻi State Constitution.

"The right of the people to be free from unreasonable searches and seizures

is firmly embedded in both the Fourth Amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution." *State v. Lopez*, 78 Hawai'i 433, 441, 896 P.2d 889, 897 (1995) (footnotes omitted). " 'As the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawai'i Constitution, we are free to give broader privacy protection than that given by the federal constitution.' " *State v. Mallan*, 86 Hawai'i 440, 448, 950 P.2d 178, 186 (1998) (quoting *State v. Kam*, 69 Haw. 483, 491, 748 P.2d 372, 377 (1998)); *see also, Lopez*, 78 Hawai'i at 445, 896 P.2d at 907 (citing *State v. Bowe*, 77 Hawai'i 51, 57, 881 P.2d 538, 544 (1994); *State v. Lessary*, 75 Haw. 446, 453–57, 865 P.2d 150, 154–55 (1994); *State v. Quino*, 74 Haw. 161, 170, 840 P.2d 358, 362, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992), *cert. denied*, 507 U.S. 1031, 113 S.Ct. 1849, 123 L.Ed.2d 472 (1993); *State v. Kaluna*, 55 Haw. 361, 369, 520 P.2d 51, 58–59 (1974); *Teixeira*, 50 Haw. at 142 n. 2, 433 P.2d at 597 n.2).

It has long been recognized in Hawai'i that generally, a person "has an actual, subjective expectation of privacy in his or her home." *Lopez*, 78 Hawai'i at 442, 896 P.2d at 898. Furthermore, that expectation is one that society recognizes as reasonable. *See id.* Inasmuch as Defendant had a subjective expectation of privacy in his home, *i.e.*, his apartment, and that expectation is one that society recognizes as reasonable, a two-step inquiry is pertinent: "(1) was the governmental activity in question a 'search' in the constitutional sense; and, if so, (2) was it a 'reasonable' search." *Id.* at 441, 896 P.2d at 897 (citing *State v. Kaaheena*, 59 Haw. 23, 28, 575 P.2d 462, 466 (1978)). Because the police were able to extract information about activity from within a constitutionally protected area,—Defendant's apartment—which could not otherwise be obtained without a warrant, the use of the thermal imager constituted a search. The question remaining is whether that warrantless search was reasonable. We have said that "[i]t is well-established that a search by law enforcement officials without a

judicial warrant issued upon probable cause is 'presumptively unreasonable' " under the Hawai'i Constitution. *Id.* at 442, 896 P.2d at 898 (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). "[S]uch searches are invalid unless they fall within one of the narrowly drawn exceptions to the warrant requirement." *Id.* (citing *State v. Paahana*, 66 Haw. 499, 504, 666 P.2d 592, 596 (1983)).

There is no exception to the warrant requirement which permits the use of a thermal imager in these circumstances. In determining that the use of a thermal imager to scan a home in a marijuana investigation violated its state constitution and the Fourth Amendment, the Washington Supreme Court stated as follows:

> The infrared device produces an image of the interior of the home that otherwise is protected by the home's walls. In this sense, the infrared thermal device allows the government to intrude into the defendant's home and gather information about what occurs there. A resident has a reasonable expectation of privacy in what occurs within the home. . . . It is this reasonable expectation of privacy in the home that is violated by warrantless infrared surveillance[.]

*State v. Young*, 123 Wash.2d 173, 867 P.2d 593, 603 (1994) (citation omitted). We concur that the warrantless use of the thermal imager is an unreasonable search. Because unreasonable, such use violated article I, section 7 of the Hawai'i Constitution. We believe the foregoing analysis is the appropriate one to apply.[11] Information from the thermal imager, then, should not have been considered under independent state grounds in arriving at probable cause to issue the search warrant.

## XI.

■ Excluding information garnered by the thermal imager, we consider the remaining parts of the affidavit relating to Defendant's high electrical usage, purported

---

11. Thus, unlike the United States Supreme Court, we do not believe the wide use of a device such as a thermal imager would be determinative

of whether an individual's right to privacy is forfeited, although it may be a factor.

makeshift vent, and Defendant's prior arrest record. *See, e.g., State v. Allen*, 2 Haw.App. 606, 616, 638 P.2d 338, 345 (1981) ("We conclude that excluding the information obtained by use of the binoculars, the remainder of the information in the affidavit was sufficient to justify the warrant.").

When compared to two similar apartments, Defendant's electrical usage records show his electrical usage to be higher.[12] There are many explanations, however, for high electrical usage other than illegal activity. For instance, an individual may run an air conditioner twenty-four hours a day. *See, e.g., State v. Huft*, 106 Wash.2d 206, 720 P.2d 838, 840 (1986) (noting that "there are too many plausible reasons for increased electrical use to allow a search warrant to be issued based on increased consumption" (citing *State v. McPherson*, 40 Wash.App. 298, 698 P.2d 563 (1985))); *Clark*, 31 F.3d at 835 (noting that high electrical "consumption is consistent with numerous entirely legal activities"); *Huft*, 720 P.2d at 841 (stating that electrical consumption and bright light emitting from the basement window "is not sufficient information to establish probable cause or to verify the tips received from the informants that the defendant was involved in criminal activity").

It was Wong's belief that Defendant's air conditioned room contained a hollow wood type frame in the window that "could be" a makeshift vent. However, there is no indication of what this belief was based upon.

This court has noted that an individual's arrest and/or conviction record may be used to assist a magistrate or judge in determining probable cause. *See Navas I*, 81 Hawai'i at 36, 911 P.2d at 1108 (" 'The use of prior arrests and convictions to aid in establishing probable cause is not only permissible, but is often helpful[,] ... especially so where ... the previous arrest or conviction involves a crime of the same general nature as the one

which the warrant is seeking to uncover.' " (Quoting *United States v. Conley*, 4 F.3d 1200, 1207 (3d Cir.1993) (citations omitted))). But, we have never held this to be outcome dispositive without more. Here, Defendant was arrested, but his record contained no convictions and all of the arrests were more than five years old.

## XII.

In sum, what was established was Defendant's identity, his place of residence, the possible existence of a wooden vent, high electrical usage for his apartment, and that Defendant had a prior arrest record. In our view, such matters would not cause a person of reasonable caution to believe that an offense was committed. *See, e.g., Navas II*, 81 Hawai'i at 116, 913 P.2d at 42. Accordingly, we hold that the search warrant for Defendant's apartment should not have been issued. *See, e.g., Clark*, 31 F.3d at 835 (stating that high electrical consumption, "which is equally consistent with both legal or illegal activity, coupled with an entirely uncorroborated anonymous tip, is simply not sufficient to establish probable cause for searching a home"). All evidence seized as a result of the warrant must be excluded. *See, e.g., State v. Araki*, 82 Hawai'i 474, 483, 923 P.2d 891, 900 (1996) (stating that " 'the United States Supreme Court has conferred upon defendants in both state and federal criminal prosecutions the right to have excluded from trial evidence which has been obtained by means of an unlawful search and seizure ....' " (quoting *State v. Abordo*, 61 Haw. 117, 120–21, 596 P.2d 773, 775 (1979))); *see also* HRPP Rule 41(e) (1995) ("A person aggrieved by an unlawful search and seizure may move the court ... to suppress for use anything so obtained....."). The court's May 27, 1999 order denying Defendant's motion to suppress, and the May 4, 1999 judgment of conviction are vacated, and the mat-

---

12. Defendant does not claim a privacy right in his electric utility records, and as such, we do not address the issue. However, at least one jurisdiction has expressly recognized such a right under its state constitution. *See e.g. In re Maxfield*, 133 Wash.2d 332, 945 P.2d 196, 200 (1997) ("While the privacy interest in electric[al] consumption records may be characterized as mini-

mal, it is still a privacy interest subject to the protections of article I, section 7[ ]" of the Washington State Constitution. (Internal quotation marks and footnote omitted.)); *State v. Young*, 123 Wash.2d 173, 867 P.2d 593, 596 (1994) ("[B]oth this court and the Legislature decided an individual has a protected privacy interest in power usage records." (Citations omitted.)).

24

ter remanded for further proceedings not inconsistent with this opinion.