**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000020
30-OCT-2020
01:01 PM
Dkt. 35 SO**

NO. CAAP-19-0000020

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI,
Plaintiff-Appellant,
v.
SAMUEL J. CLOWE and MICHELE UILANI ILAE,
Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 3CPC-18-0000387)


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Chan and Hiraoka, JJ.)

Plaintiff-Appellant State of Hawaiʻi (State) appeals from the December 18, 2018 "Findings of Fact, Conclusions of Law, and Order Granting Motion to Suppress Evidence" (Suppression Order), entered by the Circuit Court of the Third Circuit (circuit court).[1] Defendant-Appellee Samuel Clowe (Clowe) was charged with one count each of: Attempted Promoting a Dangerous Drug in the First Degree, in violation of Hawaii Revised Statutes (HRS) §§ 705-500 (2014) and 712-1241(1)(b)(ii) (Supp. 2017); Promoting a Dangerous Drug in the Second Degree, in violation of HRS § 712-1242(1)(b) (Supp. 2017); Promoting a Harmful Drug in the Fourth Degree, in violation of HRS § 712-1246.5(1) (2014); and Prohibited Acts Related to Drug Paraphernalia, in violation

---

[1] The Honorable Robert D.S. Kim presided.

of HRS § 329-43.5(a) (Supp. 2017).  Clowe was alleged to have committed the offenses on or about March 28, 2018, along with a co-defendant, Michelle Ilae (Ilae).  Clowe filed a pre-trial motion to suppress evidence obtained by a search warrant executed at Ilae's residence.  The circuit court granted Clowe's motion to suppress.

On appeal, the State argues that the circuit court erred in granting the motion to suppress.  Specifically, the State challenges the circuit court's findings of fact (FOFs) C and H, and conclusions of law (COLs) 10, 12, 14-18 of the Suppression Order.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve this appeal as follows.

Officer John McCarron (Officer McCarron) prepared an affidavit in support of the search warrant, stating that he received information from fellow Officer Nicholas McDaniel (Officer McDaniel) regarding a male and female distributing methamphetamine in the District of Kona, Hawaiʻi.  Officer McCarron was informed by Officer McDaniel that a cooperating defendant, Francis Kekona (Kekona), provided information about the distribution of methamphetamine and his own involvement in the use of methamphetamine.  Officer McCarron received information from Officer McDaniel that on March 14, 2018, Officer McDaniel contacted Kekona while Kekona was leaving the subject residential unit.  Kekona was subsequently arrested on drug and gun charges.  The affidavit states that Kekona provided the following information to Officer McDaniel: (1) on March 14, 2018, Kekona observed, while in the presence of Ilae and Clowe, approximately half a pound of methamphetamine at the subject residential unit; (2) Kekona was told that Ilae and Clowe both went to Oahu two days before his contact with them on March 14, 2018, to pick up one pound of methamphetamine and returned to

2

Kona with the methamphetamine; and (3) Kekona has visited Clowe at the subject residential unit multiple times. The affidavit further states that Officer Marco Segobia (Officer Segobia) spoke with the community manager of the residential community, Tammy Ichokwan (Ichokwan). Ichokwan did not know Kekona but recognized the moped that police contacted Kekona with on March 14, 2018, stated that it is frequently parked in front of the building, and that the moped rider frequents the subject residential unit. The affidavit also states that Officer McDaniel corroborated information received from Kekona regarding at least three different areas of narcotics distribution in the Kailua-Kona area.

At the hearing on the motion to suppress, the parties stipulated to the admission of State's Exhibit 1, which was a copy of the subject affidavit to the search warrant, and the court judicially noticed Kekona's prior convictions, as requested by Clowe. No other exhibits were admitted and no witnesses were called.

The State challenges the following FOFs of the Suppression Order:

> C. The search warrant at issue was issued by the Court based on information provided to the police by a confidential informant.
>
> . . . .
>
> H. The [confidential informant] in this case has an extensive history of criminality. *See* Exhibit 2. The [confidential informant] was convicted of two (2) felony counts of Theft in the Second Degree in 1991, and therefore the [confidential informant]'s reliability, given his convictions for dishonesty, is suspect.

The State also challenges the following COLs of the Suppression Order:

> 10. In <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), the Supreme Court developed a two-prong test clarifying what a criminal defendant must show when challenging the veracity of statements made in an affidavit supporting a search warrant. If both prongs are met, the search warrant must be voided and the fruits of the search excluded. <u>Franks</u>, 438 U.S. at 155-56. . . .

3

. . . .

12. As a further rule, where the probable cause determination made by a judge before the issuance of a search warrant must rely on and take into account information provided to the Court by a tipster and/or a confidential informant ("CI"), the burden rests with the government to demonstrate to the Court that the CI used in this case has a history of providing the government with reliable tips in the past that led to arrests of persons and the charging of these persons with crimes.

. . . .

14. Officer [John McCarron] did not [explain in his affidavit to the court: (1) how he concluded Kekona was reliable and (2) how he believed Kekona was trustworthy]. *See* Exhibit 1. Nothing in [McCarron]'s affidavit discusses or describes what tip Kekona provided [McCarron] in the past that led to an arrest and to the charging of persons with crimes. The reliability prong of the Aguillar/Spinelli test, the first prong of the test, cannot be satisfied by the state because [McCarron] excludes or omits completely from his affidavit any discussions of past tips provided by Kekona to the police that turned out to be true and that led to someone being arrested and charged with a crime.

15. [McCarron] excludes or omits completely from this affidavit any discussion about the credibility of his CI, Kekona. The issue of the CI's credibility is always relevant to the Court's probable cause determination when the Court makes this kind of determination for the purpose of deciding whether or not to issue a search warrant.

16. The CI, Kekona, has a long and extensive history of criminality, including convictions involving crimes of dishonesty. In 1991, Kekona was convicted of two (2) felony counts of Theft in the Second Degree. As Kekona was convicted of crimes involving dishonesty – and a felony conviction for a crime of dishonesty is always relevant when assessing how much weight to give the unsworn statement of a CI – this information was material and relevant to the Court's probable cause determination, should have been provided to the court by [O]fficer [McCarron], was not provided to the Court by [McCarron], and was therefore unavailable to the court when it made its probable cause determination in this case. Had this information been properly disclosed by the State to the judge at the time of the judge's probable cause determination, there is a strong probability the judge might have concluded the CI is not credible because CI has two (2) felony convictions for crimes involving dishonesty.

17. The failure of [McCarron] to disclose this highly relevant information to the magistrate judge before the judge signed off on the warrant prevented the judge from making a fully informed decision about the propriety of issuing the search warrant at issue in this case. This error or omission on the part of [McCarron] cannot be said to be harmless beyond a doubt because the credibility of the CI is always relevant to and material to the Court's probable cause determination.

4

> 18. [McCarron] was required to make this disclosure
> to the issuing court – which he did not. For this reason
> and for the other reasons cited to above, the evidence
> seized in this case is suppressed.

In sum, the circuit court characterized Kekona as a confidential informant and concluded that the search warrant failed to establish the veracity of the information stated in the affidavit to the search warrant, specifically Kekona's credibility. The State argues that the circuit court erroneously evaluated Kekona's credibility under the standard applicable to confidential informants, which Kekona was not. In particular, the State argues that the circuit court erred in granting the motion to suppress based on its conclusions that the State did not meet its burden of demonstrating that Kekona had a history of providing the government with reliable tips in the past and that the State also failed to disclose Kekona's criminal history to the judge who approved the search warrant.

Given the full disclosure of Kekona's identity in the affidavit, Kekona was not a confidential informant. The affidavit specifically identified Kekona by his full name and referred to him as a "cooperating defendant" who was arrested on drug and gun charges after leaving the residential unit that is the subject of the search warrant at issue.[2] FOF C was therefore clearly erroneous. Clowe also concedes this point in his answering brief.

Although Kekona was not a confidential informant, the information he provided served as the basis for the affidavit for the search warrant and constituted hearsay. We must therefore determine whether this hearsay information was sufficiently reliable to support probable cause for the issuance of the search warrant.

In evaluating the validity of search warrants based on

---

[2] We acknowledge that the affidavit also seems to refer to Kekona as the "CI" in one instance. As we have stated, however, Kekona was clearly not a confidential informant, or CI, as he was fully identified.

hearsay information provided by an informant, the Hawaiʻi Supreme Court uses the two-part test announced in <u>Aguilar v. Texas</u>, 378 U.S. 108 (1964), and expounded upon in <u>Spinelli v. United States</u>, 393 U.S. 410 (1969). <u>Carlisle ex. rel. State v. Ten Thousand Four Hundred Forty-Seven Dollars in U.S. Currency ($10,447.00)</u>, 104 Hawaiʻi 323, 330, 89 P.3d 823, 830 (2004).[3] Under this test, the affidavit must set forth: (1) some of the underlying circumstances from which the informant drew the conclusion regarding criminal activity; and (2) some of the reasons which led the affiant to believe that the informant was credible or the informant's information was reliable. <u>State v. Decano</u>, 60 Haw. 205, 210, 588 P.2d 909, 913-14 (1978).

Here, the affidavit states that Kekona saw approximately half a pound of methamphetamine at the subject residential unit while he was in the presence of Clowe and Ilae. Because the affidavit relates that Kekona provided this information based on his personal observations, the first prong of the <u>Aguilar</u> test was satisfied. <u>See</u> <u>State v. Davenport</u>, 55 Haw. 90, 95-96, 516 P.2d 65, 69 (1973) (holding that the first prong of the <u>Aguilar</u> test was met where the informant's conclusion that illegal activity was being conducted at the specified location was based upon the informant's personal observation).

As for Kekona's credibility or the reliability of the information he provided, Kekona's identification in the affidavit is significant. "[A]n identified informer would generally be entitled to greater credibility than a 'faceless' informer would

---

[3] The Hawaiʻi Supreme Court noted:

> We continue to use the two-part <u>Aguilar</u> test, although we recognize that the United States Supreme Court has abandoned the <u>Aguilar</u> test in favor of a totality of the circumstances test. <u>Illinois v. Gates</u>, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); <u>see also</u> <u>United States v. Alvarez</u>, 358 F.3d 1194, 1203 (9th Cir. 2004) (following <u>Illinois v. Gates</u>).

<u>Carlisle</u>, 104 Hawaiʻi at 330 n.9, 89 P.3d at 830 n.9.

be," State v. Joao, 55 Haw. 601, 604, 525 P.2d 580, 583 (1974), because an identified informer can be held accountable for his or her statements. See State v. Detroy, 102 Hawaiʻi 13, 19, 72 P.3d 485, 491 (2003) ("[I]f the telephone call is truly anonymous, the informant has not placed his credibility at risk and can lie with impunity." (quoting Florida v. J.L., 529 U.S. 266 (2000) (Kennedy, J., concurring))). The affidavit stated that Kekona admitted his own involvement in and familiarity with the use of methamphetamine. Kekona also disclosed that he observed methamphetamine at a residence which he frequently visited and which he was leaving before he himself was arrested. Cf. United States v. Harris, 403 U.S. 573, 584 (1971) (plurality opinion) ("Concededly admissions of crime do not always lend credibility to contemporaneous or later accusations of another. But here the informant's admission that over a long period and currently he had been buying illicit liquor on certain premises, itself and without more, implicated that property and furnished probable cause to search."). Such admissions that are against one's penal interest are relevant indicia of the informant's credibility. Id. at 583-84 ("Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search."); State v. Yaw, 58 Haw. 485, 490, 572 P.2d 856, 860 (1977) (concluding that admissions against penal interest have been considered to be a relevant indicia of an informant's credibility). The affidavit also states that Officer Segobia conducted a follow-up investigation based on Kekona's information and confirmed that: Ilae lives at the subject residential unit, Clowe was her boyfriend, and that Clowe has been a guest at Ilae's unit. Officer Segobia also confirmed that Kekona's moped has been seen frequently parked in front of the subject residential unit. The affidavit further states that Officer McDaniel corroborated information that Kekona provided regarding three different areas of narcotics distribution in the

Kailua-Kona area.  See Detroy, 102 Hawaiʻi at 20, 72 P.3d at 492 (stating that corroboration by a law enforcement officer of various details in an informer's report could properly support a conclusion that the informer was truthful).  Combined with the statements that Kekona personally observed the methamphetamine at a residence which he frequently visited and from which he was leaving when arrested himself, and that Kekona was familiar with Clowe and Ilae, the affidavit therefore contained sufficient information to support Officer McCarron's conclusion that Kekona was credible or that the information Kekona provided was reliable and the second prong of the Aguilar test was satisfied.  COL 15, which contained a finding that McCarron failed to include any discussion about Kekona's credibility was clearly erroneous.

In concluding that Kekona's reliability as an informant was "suspect," the circuit court relied upon a finding that he had an "extensive history of criminality" involving "convictions for dishonesty," which the State argues is an embellishment.  In making this finding, the circuit court judicially noticed Kekona's convictions for two felony counts of Theft in the Second Degree.  In the context of admissible impeachment evidence under Hawaii Rules of Evidence (HRE) Rule 609(a), the supreme court has held:

> [A] theft offense is not, per se, a "crime of dishonesty"
> . . . .  Rather, to be admissible impeachment evidence
> pursuant to HRE Rule 609(a), the defendant must have
> committed the prior theft offense under circumstances that,
> by their very nature, render his or her prior conviction of
> the offense relevant to and probative of his or her veracity
> as a witness.

State v. Pacheco, 96 Hawaiʻi 83, 100, 26 P.3d 572, 589 (2001) (citations omitted).  We find this holding to be applicable here where Clowe asserted, and the circuit court adopted the reasoning, that Kekona's criminal history indicated a lack of credibility on Kekona's part.  The record contains no details of the circumstances under which Kekona committed theft in the second degree, let alone any details relating to the convictions that would support a finding that Kekona was unreliable.  There

being no evidence in the record to support the circuit court's finding that Kekona's reliability was suspect because he was convicted of crimes of dishonesty, that portion of FOF H was clearly erroneous.

The circuit court also concluded that the affidavit's omission of Kekona's criminal history prevented the issuing judge from making a fully informed decision regarding the reliability of the information provided and determining probable cause.

> In Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that a defendant seeking an evidentiary hearing to determine whether a facially valid affidavit contains false statements must make a substantial preliminary showing that: (1) the affidavit contains intentionally or recklessly false statements and (2) the affidavit cannot support a finding of probable cause without the allegedly false information.  If a defendant prevails at a Franks evidentiary hearing, evidence obtained on the basis of a search warrant issued on an affidavit containing material omissions or misrepresentations must be excluded.  In United States v. Stanert, 762 F.2d 775 (9th Cir. 1985), amended, reh'g denied, 769 F.2d 1410 (9th Cir. 1985), [the Ninth Circuit Court of Appeals] extended Franks to omissions of material facts and concluded that "the Fourth Amendment mandates that a defendant be permitted to challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead."  Id. at 781.

United States v. DeLeon, 979 F.2d 761, 763 (9th Cir. 1992).  On appeal, the State argues that the circuit court's statement of the law established in Franks failed to include that, in order to be entitled to a Franks evidentiary hearing, the defendant must first make a substantial preliminary showing of the two prongs. Despite this omission, we conclude that COL 10 was otherwise a correct statement of law.

To the extent that the State also seems to vaguely assert that Clowe failed to make the required substantial preliminary showing, the State seems to argue that the circuit court should not have considered Kekona's criminal history as it was outside the scope of the four corners of the affidavit. However, the State also expressly states that it does not claim any error in the court's judicial noticing of Kekona's criminal history.

9

Regardless of whether the circuit court properly considered Kekona's criminal history in ruling on the motion to suppress, we conclude that the circuit court erred in COLs 16-18 when it concluded that Officer McCarron was required to disclose information regarding Kekona's criminal history and that the omission of such information rendered the affidavit insufficient to establish probable cause.  Neither the circuit court nor Clowe cited any authority that stands for the proposition that a disclosure of an informant's criminal history is required of the State, particularly where the informant has been identified and there are other indicia of the informant's credibility or the information's reliability.  Further, as we previously stated, there is no evidence in the record pertaining to Kekona's previous convictions that supports a finding that such information would have had a bearing on the probable cause determination (i.e., that the circumstances of his past criminal activity were relevant to and probative of his penchant for honesty).  The circuit court thus erroneously relied on the affidavit's omission of Kekona's prior convictions as a basis for granting the motion to suppress.

In COL 12, the circuit court correctly stated that the State carries the burden of demonstrating that an informant has a history of providing the government with reliable tips in the past that led to arrests of persons and the charging of these persons with crimes.  However, the circuit court erroneously concluded in COL 14 that the State's failure to meet this burden rendered Kekona's information unreliable. See State v. Sherlock, 70 Haw. 271, 274, 768 P.2d 1290, 1292 (1989) ("While the history of prior dealings between an informant and the police can be an important element in establishing the reliability of the informant, the absence of such a history does not of itself prove the informant unreliable." (quoting United States v. Wong, 470 F.2d 129, 131 (9th Cir. 1972)).  The circuit court erroneously relied on these conclusions as a basis for granting the motion to

suppress.

The affidavit to the search warrant satisfied the two-part <u>Aquilar</u> test and there was probable cause for the issuance of the search warrant. The circuit court therefore erred in granting the motion to suppress.

Based on the foregoing, we vacate the December 18, 2018 "Findings of Fact, Conclusions of Law, and Order Granting Motion to Suppress Evidence," entered by the Circuit Court of the Third Circuit and remand this matter for further proceedings.

DATED: Honolulu, Hawaiʻi, October 30, 2020.

On the briefs:

Kauanoe A. Jackson,
Deputy Prosecuting Attorney,
County of Hawaiʻi,
for Plaintiff-Appellant.

John Knoebber,
for Defendant-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Derrick H. M. Chan
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge