**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000754
22-SEP-2025
10:20 AM
Dkt. 154 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---oOo---


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
CASEY BIBBS, Defendant-Appellant


NO. CAAP-22-0000754


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-19-0000832)


SEPTEMBER 22, 2025


NAKASONE, C.J., AND WADSWORTH AND McCULLEN, JJ.


OPINION OF THE COURT BY WADSWORTH, J.

This case raises a constitutional challenge to Hawaii's statutory ban on the possession of large-capacity magazines, or LCMs, for use with a pistol. Hawaii Revised Statutes (**HRS**) § 134-8(c) generally prohibits the manufacture, possession, or sale of detachable ammunition magazines that can hold more than ten rounds and be used with a pistol. Defendant-Appellant Casey Bibbs (**Bibbs**) was convicted of, among other things, possessing a prohibited magazine in violation of this law. He contends that his convictions cannot stand because HRS § 134-8(c) infringes on his right to bear arms, as protected by the Second Amendment to the United States Constitution.

Bibbs appeals from the "Judgment; Conviction and Probation Sentence; Terms and Conditions of Probation; Notice of Entry" (**Judgment of Conviction and Sentence**) entered on December 14, 2022, in the Circuit Court of the Second Circuit (**Circuit Court**).[1/]   Bibbs also challenges the Circuit Court's: (1) September 15, 2021 "Order Denying [Bibbs's] Motion to Suppress Evidence" (**Order Denying Motion to Suppress**); and (2) December 23, 2022 "Order Denying [Bibbs's] Motion to Set Aside Conviction or Alternatively for New Trial" (**Order Denying Motion to Set Aside Conviction**).[2/]   These challenges are based solely on Bibbs's contention that "his actions were protected by the Second Amendment."

We hold that HRS § 134-8(c)'s prohibition on the possession of large-capacity magazines does not violate the Second Amendment.  The Ninth Circuit recently concluded in an *en banc* opinion that California's similar ban on the possession of LCMs comports with the Second Amendment – in part because LCMs are neither "arms" nor accessories protected by the text of the Second Amendment.  Duncan v. Bonta, 133 F.4th 852, 860, 865, 869 (9th Cir.), petition for cert. filed, No. 25-198 (U.S. Aug. 19, 2025).  Other courts have similarly concluded that the Second Amendment's text does not encompass the right to possess LCMs. See, e.g., Or. Firearms Fed'n v. Kotek, 682 F. Supp. 3d 874, 911–13 (D. Or. 2023) (ruling that LCMs are not "arms" within the meaning of the Second Amendment); Ocean State Tactical, LLC v. Rhode Island, 646 F. Supp. 3d 368, 384–88 (D.R.I. 2022) (same), aff'd on other grounds, 95 F.4th 38 (1st Cir. 2024); Brumback v. Ferguson, No. 1:22-cv-03093-MKD, 2023 WL 6221425, at *8 (E.D. Wash. Sept. 25, 2023) (same); State v. Gator's Custom Guns, Inc., 586 P.3d 278, 283 (Wash. 2025) (same); cf. Bevis v. City of Naperville, 85 F.4th 1175, 1195 (7th Cir. 2023) (concluding for a related reason that LCMs are not protected "arms").

---

[1/]     The Honorable Kirstin M. Hamman presided.

[2/]     The Honorable Blaine J. Kobayashi entered the Order Denying Motion to Suppress.  The Honorable Kirstin M. Hamman entered the Order Denying Motion to Set Aside Conviction.

In this case, Bibbs has not established that the Second Amendment's plain text protects his possession of a prohibited LCM. The Circuit Court did not err in denying Bibbs's motion to set aside his convictions on that basis. Nor did the court err in denying Bibbs's motion to suppress evidence based on the alleged lack of probable cause to support the search warrant that led to the recovery of the firearms and LCMs at issue in this case.

Although the issues raised by Bibbs lack merit, we notice plain error affecting his substantial rights as to the lack of a merger instruction on his convictions in Counts 6 and 7 for possession of the same prohibited LCM. We therefore remand these counts to the Circuit Court for further proceedings consistent with this opinion. We otherwise affirm the Judgment of Conviction and Sentence.

## I. Background

### A. The Challenged Statute

In 1992, the Legislature enacted Act 286, which amended HRS § 134-8(c) to prohibit "[t]he manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of detachable ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol . . . ."[3] 1992 Haw. Sess. Laws Act 286, § 3 at 741-42. The LCM restrictions in section 134-8(c), along with provisions prohibiting ownership of "assault pistols," followed several deadly mass shootings in the United States. Id. These provisions addressed the Legislature's concern with the use of weapons that could "fir[e] a large amount of ammunition in a short period of time." H. Stand. Comm. Rep. No. 1261-92, in 1992 House Journal, at 1382. This feature, the Legislature found, made the prohibited items "especially dangerous" "while having little or no utility for sporting applications." Id.

---

[3] This prohibition does not apply "to magazines originally designed to accept more than ten rounds of ammunition which have been modified to accept no more than ten rounds and which are not capable of being readily restored to a capacity of more than ten rounds." 1992 Haw. Sess. Laws Act 286, § 3 at 741-42; see HRS § 134-8(c).

**B.  The Factual and Procedural Background**

In November 2019, Bibbs hired ʻOihana Electrical Services to perform electrical work at his home in Wailuku, Maui. On November 6, ʻOihana Electrical Services owner Eric Dowells (**Dowells**) asked Chad Victorino-Rodrigues (**Victorino-Rodrigues**), an apprentice electrician, to assist him at Bibbs's residence.

Victorino-Rodrigues later testified at trial that while he was working at Bibbs's residence, Bibbs made "rude gestures" and insulting remarks, leading to "an uncomfortable situation." Victorino-Rodrigues packed up his tools and told Dowells that he quit.  He then walked to his truck to load his tools and leave. Bibbs went into the house, and as Victorino-Rodrigues began reversing his truck out of the driveway, Bibbs "came out with his gun telling [Victorino-Rodrigues] to leave [the] property." Bibbs followed Victorino-Rodrigues up the driveway, pointed the gun at his truck, and told him to leave.  Victorino-Rodrigues drove away from Bibbs's residence and called the police to report the incident.

Maui Police Department (**MPD**) officers arrived at Bibbs's residence to investigate.  Bibbs was detained and advised of his constitutional rights; he did not consent to a search of the premises.  Officer Erik Matsuo (**Officer Matsuo**) placed Bibbs under arrest for the offense of Terroristic Threatening in the First Degree, and Bibbs was transported to the Wailuku police station.

That same day, MPD obtained a warrant authorizing the search of Bibbs's residence.  In executing the warrant, MPD officers recovered two firearms, over 500 rounds of live ammunition, and several magazines, "some high capacity[.]"  The firearms were not registered in any county in Hawaiʻi.

On December 16, 2019, Bibbs was indicted on eight counts related to the events of November 6, as follows:

(1)  Count 1, Terroristic Threatening in the First Degree, in violation of HRS § 707-716(1)(e);

(2)  Count 2, Unlawful Possession of Firearm, in violation of HRS § 134-4(b);

> (3) Count 3, Unlawful Possession of Firearm, in violation of HRS § 134-4(b);
>
> (4) Count 4, Permit to Acquire Ownership of a Firearm, in violation of HRS § 134-2[4/] and subject to HRS § 134-17(c);
>
> (5) Count 5, Permit to Acquire Ownership of a Firearm, in violation of HRS § 134-2 and subject to HRS § 134-17(c);
>
> (6) Count 6, Possession of Prohibited Detachable Ammunition Magazine, in violation of HRS § 134-8(c) and subject to HRS § 134-8(d)[5/];
>
> (7) Count 7, Possession of Prohibited Pistol Magazine, in violation of HRS § 134-8(c) and subject to HRS § 134-8(d); and
>
> (8) Count 8, Possession of Prohibited Pistol Magazine, in violation of HRS § 134-8(c) and subject to HRS § 134-8(d).

---

[4/]     At the time of the alleged offense, HRS § 134-2 (2011) stated, in relevant part:

> (a)  No person shall acquire the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, until the person has first procured from the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither place of business nor residence, the person's place of sojourn, a permit to acquire the ownership of a firearm as prescribed in this section.

[5/]     At the time of the alleged offense, HRS § 134-8 (2011) stated, in relevant part:

> (c)  The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of detachable ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol is prohibited. This subsection shall not apply to magazines originally designed to accept more than ten rounds of ammunition which have been modified to accept no more than ten rounds and which are not capable of being readily restored to a capacity of more than ten rounds.
>
> (d)  . . . Any person violating subsection (c) shall be guilty of a misdemeanor except when a detachable magazine prohibited under this section is possessed while inserted into a pistol in which case the person shall be guilty of a class C felony.

On August 23, 2021, Bibbs filed a Motion to Suppress Evidence. The motion sought "to suppress[] and preclud[e] from use at trial, all illegally seized evidence obtained from searches and seizures of [Bibbs's] property, which violated [Bibbs's] rights under Article I, Section 7 of the Hawaiʻi State Constitution . . . and the Second Amendment . . . ." Bibbs argued that there was "no probable cause for the unlawful search because [Bibbs] was exercising his Second Amendment [rights]."

On September 3, 2021, the Circuit Court held an evidentiary hearing on the motion to suppress. Bibbs and Officer Matsuo testified. Bibbs claimed that on the date of the incident, he was helping Dowells with some of the electrical work prior to Victorino-Rodrigues's arrival. Sometime after Victorino-Rodrigues began working, "out of the "blue" he said, "I quit, I'm out of here, man." Bibbs told Victorino-Rodrigues, "[I]f you start quitting things now in life, you'll be quitting everything." Victorino-Rodrigues replied, "what the F did you say" and started to approach Bibbs "fist in hand," but Dowells interceded. Bibbs then ran into his house and "got [his] weapon," came out to the front door, and told Victorino-Rodrigues that he needed to leave the property. When Victorino-Rodrigues drove halfway down the driveway and parked, Bibbs walked out into the yard and told Victorino-Rodrigues, "you need to get out of my . . . driveway, you need to leave here." According to Bibbs, "[t]hat was pretty much about it. He left."

On cross-examination, Bibbs further testified that he brought a Ruger handgun and a Ruger long gun into Hawaiʻi when he moved from Arizona and did not inquire about Hawaii's gun laws until "after the fact." He admitted that on the day of the incident, his two firearms were not registered in Hawaiʻi, he possessed a magazine for the handgun that could hold fifteen rounds, and he had two magazines for the rifle that could hold thirty rounds each. Bibbs's counsel argued during the hearing: "Hawaiʻi does have restrictive laws. It's our arguments [sic] that these laws are unconstitutional and Mr. Bibbs was acting within his constitutional rights when he pointed the gun at Mr. Victorino[-]Rodrigues and asked him to leave. So based on that,

a search warrant was unconstitutional . . . ."  (Formatting altered.)

The Circuit Court denied the motion to suppress, stating in part:  "There was no evidence presented to the Court that the search warrant that was obtained by the Maui Police Department was invalid for lack of probable cause or for any other reason."

Bibbs's trial began on September 12, 2022.  On the second day of trial, Victorino-Rodrigues testified about the November 6, 2019 incident with Bibbs as described above.  On cross-examination, he also stated that during the incident, Dowells "never even got off the ladder" he was on.  "He did nothing."

Dowells testified next, as follows:  During the November 6, 2019 job, Victorino-Rodrigues quit and Dowells did not know why.  He did not hear Bibbs make any disparaging remarks to Victorino-Rodrigues, and did not hear "any heated comments between them back and forth."  After quitting, Victorino-Rodrigues walked away, but shortly later came back toward Bibbs "saying something, not choice words."  Dowells jumped down from a ladder, "got in between them[,]" "pushed [his] hands on [Victorino-Rodrigues] and said, Yo, stop."  Victorino-Rodrigues "turned around and went back to his truck."  Bibbs was "upset" and "was gone for a moment out of [Dowells's] sight and [Dowells] d[id]n't know where he went[.]"  Dowells saw Bibbs come back from a grassy area and "going down the side of his house . . . ."  Dowells did not see anything in Bibbs's hands; he did not see a gun.

Officer Matsuo took the stand after Dowells.  He testified as follows:  On November 6, 2019, he and other MPD officers were dispatched to respond to Victorino-Rodrigues's emergency call.  When Officer Matsuo met Victorino-Rodrigues, he was "very excited, anxious, talking very quickly, breathing rapidly."  Victorino-Rodrigues told Officer Matsuo about the incident with Bibbs.  When Officer Matsuo arrived at the Bibbs residence, "[he] had information that a firearm was brandished in the threatening of another individual [at] which time Mr. Bibbs

was detained." Bibbs was "[g]enerally[] uncooperative" in response to MPD officers at the scene and would not allow them to search his home. After obtaining the search warrant, MPD recovered two firearms – a rifle and a pistol – in Bibbs's residence, along with magazines, ammunition and a rifle case. The rifle case, which was found under a bed in one of the bedrooms, contained a rifle, magazine and ammunition. A semiautomatic 9mm pistol, loaded with a magazine containing 17 rounds of live ammunition, was found in another room on a "windowsill [in the residence] next to the air conditioning unit." Officer Matsuo found that the two firearms were not registered within the County of Maui.

After Matsuo's testimony, the State rested its case. The defense orally moved for a judgment of acquittal, arguing that the State had not proven the elements of the charged offenses. The Circuit Court granted the motion as to Counts 2 and 3,[6] but denied it as to the remaining six counts. Bibbs elected not to testify, and the defense rested.

The following day, the State orally moved to dismiss Count 8, because testimony by Officer Matsuo had indicated that the magazine referenced in that count did not actually have the capacity to hold more than ten rounds. The Circuit Court granted the motion.

As a result, the jury was instructed on Counts 1, 4, 5, 6, and 7. Following deliberations, the jury returned a not guilty verdict on Count 1, Terroristic Threatening in the First Degree, and guilty verdicts on Count 4, Permit to Acquire Ownership of a Firearm; Count 5, Permit to Acquire Ownership of a Firearm; Count 6, Possession of Prohibited Detachable Ammunition Magazine; and Count 7, Possession of Prohibited Pistol Magazine.[7]

---

[6] The Circuit Court concluded that the State had presented no evidence that the firearms at issue were "owned by another." HRS § 134-4(b) ("No person shall possess any firearm that is owned by another . . . without a permit from the chief of the police of the appropriate county . . . .").

[7] Counts 6 and 7 addressed Bibbs's possession of an LCM containing 17 rounds of ammunition, in violation of HRS § 134-8(c) (a misdemeanor), which was inserted into a pistol, in violation of HRS § 134-8(d) (a Class C felony).

On September 23, 2022, Bibbs filed a motion to set aside his convictions, by which he "renew[ed]" his motion for judgment of acquittal, or alternatively for a new trial. Bibbs argued that his conduct was protected by the Second Amendment, and the search warrant was improperly based on Bibbs's constitutionally protected conduct. Bibbs also argued that HRS § 134-8(c) is unconstitutional under N.Y. State Rifle & Pistol Association v. Bruen, 597 U.S. 1 (2022). The State opposed the motion.

On October 21, 2022, the Circuit Court heard the motion and summarized Bibbs's argument as follows: "[B]ecause the defendant was acquitted of the terroristic threatening that, therefore, there was no basis to obtain the search warrant, and the firearms charges were -- are, therefore, unconstitutional." Defense counsel responded: "Correct, your Honor. He . . . cannot be punished for exercising a constitutional right . . . ." After noting that the standard of proof to convict at trial is "very different" than the standard to make an arrest or to obtain a search warrant, the Circuit Court denied the motion.

The Circuit Court sentenced Bibbs to one year of probation on each of Counts 4, 5, and 7, and four years of probation on Count 6, with all terms to run concurrently. Bibbs was also sentenced to various special conditions of probation, including serving four days in jail with credit for time served.

This appeal followed. Bibbs's opening brief, raises the following points of error:

1. "It was error to deny Bibbs'[s] Motion to Suppress Evidence because his actions were protected by the Second Amendment"; and

2. "It was error to deny Bibbs'[s] Motion to vacate convictions because his actions were protected by the Second Amendment."

## II. Standards of Review

### A. Probable Cause for a Search Warrant

We review "the determination of probable cause for the issuance of a search warrant under the *de novo* standard . . . ."

State v. Quiday, 138 Hawaiʻi 124, 127, 377 P.3d 65, 68 (App. 2016) (internal quotation marks omitted) (quoting State v. Detroy, 102 Hawaiʻi 13, 18, 72 P.3d 485, 490 (2003)).

## B.   Motion for Judgment of Acquittal/New Trial

We review a ruling on a motion for judgment of acquittal by applying the same standard as the trial court, namely, "whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt." State v. Angei, 152 Hawaiʻi 484, 492, 526 P.3d 461, 469 (2023) (quoting State v. Jhun, 83 Hawaiʻi 472, 481, 927 P.2d 1355, 1364 (1996)). "The granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion." State v. Williams, 149 Hawaiʻi 381, 391, 491 P.3d 592, 602 (2021).

## C.   Constitutional Law

"We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." W. Maui Resort Partners LP v. Cnty. of Maui, 154 Hawaiʻi 121, 132, 547 P.3d 454, 465 (2024) (quoting Gardens at W. Maui Vacation Club v. Cnty. of Maui, 90 Hawaiʻi 334, 339, 978 P.2d 772, 777 (1999)).

### III.  Discussion

Bibbs contends that the Circuit Court erred in denying his motion to suppress and his motion to set aside convictions because "his actions were protected by the Second Amendment." He argues that one of the statutes under which he was convicted, HRS § 134-8(c), is unconstitutional when analyzed under the framework announced by the United States Supreme Court in Bruen.[8]

---

[8]   Bibbs does not contend that the requirement under HRS § 134-2 that he obtain permits to acquire firearms is unconstitutional.

10

More specifically, Bibbs argues that "magazines are 'arms' within the scope of the Second Amendment," "magazines [holding] over ten rounds are in common use for lawful purposes," and "the State cannot show that relevant historical tradition justifies its magazine ban under <u>Bruen</u>." (Formatting and capitalization altered.) Bibbs also argues that the search warrant that resulted in the recovery of his firearms and magazines was improperly based on his constitutionally protected conduct.

The State contends that HRS § 134-8(c) is constitutional and, more specifically, that Bibbs failed to carry his initial burden of establishing that his conduct - possessing a prohibited LCM – "fell under the protection of the Second Amendment[.]"[9] The State argues that "[t]he historical question that Bibbs now faults the State for not addressing was simply never reached below, due to Bibbs's failure to show his conduct was protected by the Second Amendment in the first place." On the latter issue, the State maintains that LCMs are not protected by the Second Amendment because they (a) are not "arms" within the meaning of the Second Amendment, (b) were not shown below to be commonly used in self-defense, and (c) are "dangerous and unusual." The State further contends that even if LCMs are protected by the Second Amendment, HRS § 134-8(c) is consistent with the Nation's historical tradition of firearm regulation. Finally, the State argues that there was probable cause to support the search warrant of Bibbs's residence.

We address Bibbs's constitutional challenge to HRS § 134-8(c) first, before turning to his argument regarding the search warrant. We then address the merger issue affecting Counts 6 and 7.

## A. Bibbs Has Not Established that the Second Amendment's Plain Text Protects His Possession of the Prohibited LCM

Bibbs argues that HRS § 134-8(c) violates the Second Amendment when analyzed under the <u>Bruen</u> standard.

---

[9] The Attorney General of the State of Hawaiʻi similarly argues in an amicus curiae brief that HRS § 134-8(c) withstands scrutiny under the Second Amendment and the test established in <u>Bruen</u>.

The Second Amendment to the United States Constitution states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment protects "an individual right to keep and bear arms as a means of self-defense." Bruen, 597 U.S. at 17; see Heller, 554 U.S. at 595, 635-36. Two years later, the Court deemed that right fully applicable to the states through the Fourteenth Amendment. See McDonald v. City of Chicago, 561 U.S. 742, 749, 791 (2010).

More recently, in Bruen, the Court held that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 597 U.S. at 10. In reaching this conclusion, the Court announced the following framework for deciding Second Amendment challenges to firearms regulations:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

Id. at 24; see Duncan, 133 F.4th at 865. Under this framework, an individual challenging a firearm regulation on the ground that it violates the Second Amendment must initially show that "the Second Amendment's plain text covers [their] conduct[.]" Bruen, 597 U.S. at 24; see Duncan, 133 F.4th at 865; see also Kotek, 682 F. Supp. 3d at 888 ("[A] plaintiff challenging a firearm regulation must show the plain text of the Second Amendment covers the conduct regulated by the challenged law."). If the challenger satisfies this requirement, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Bruen, 597 U.S. at 24.

Here, that means Bibbs was required at the outset to demonstrate that the conduct at issue — possessing a prohibited LCM — fell with the Second Amendment's plain text. Only if Bibbs carried this burden would the State then be required to "prove

that the challenged regulation is consistent with the historical tradition of firearm regulation."  Kotek, 682 F. Supp. 3d at 888; see Bruen, 597 U.S. at 24.

Bibbs asserts that possessing LCMs falls within the Second Amendment's plain text because:  (1) "[m]agazines are essential to the firearm that individuals 'take into [their] hands,' and are thus classified as part of the 'arm' itself" (quoting Heller, 554 U.S. at 581); (2) "magazines have long been commonly possessed in the United States for lawful purposes — including, but not limited to, the core lawful purpose of self-defense"; and (3) "[LCMs] are prevalent in America . . . [and] are commonly used in many handguns . . . ."  We note that Bibbs offers no factual support for any of his assertions, and the record is bereft of any evidence supporting them.

The Second Amendment's text encompasses the right "to keep and bear Arms."  In Heller, the Supreme Court held that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."  554 U.S. at 582.  The Court construed "arms" to include "'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'"  Id. at 581 (quoting 1 Timothy Cunningham, A New and Complete Law Dictionary (1771)).  The Ninth Circuit has elaborated:  "The term [arms] includes commonplace weapons and is not limited to military weapons.  The meaning of '[a]rms' thus broadly includes nearly all weapons used for armed self-defense."  Duncan, 133 F.4th at 866.

The Second Amendment's text also "carr[ies] an implicit, corollary right to bear the components or accessories necessary for the ordinary functioning of a firearm."  Id. (citing Jackson v. City & Cnty. of San Francisco, 746 F.3d 953, 967 (9th Cir. 2014)); see Gator's Custom Guns, 586 P.3d at 285 (the Second Amendment's protection "is broader than simply protecting 'arms' — it protects individual conduct that falls within the scope of the right to bear arms in self-defense, and that implies protection of corresponding rights that are necessary to give the right to possess a firearm for self defense

meaning." (citing <u>Bruen</u>, 597 U.S. at 17)). Within the Ninth Circuit, this corollary right has encompassed accessories such as bullets, "without which 'the right to bear arms would be meaningless.'" <u>Kotek</u>, 682 F. Supp. 3d at 912 (quoting <u>Jackson</u>, 746 F.3d at 967). "A complete ban on ammunition thus would implicate the Second Amendment, as likely would a ban on, for example, firearm triggers." <u>Duncan</u>, 133 F.4th at 867.

Here, Bibbs has failed to establish that an LCM is an "arm" within the meaning of the Second Amendment or a protected accessory. LCMs themselves do not fall with the broad definition of "arms." <u>See</u> <u>id.</u> They are not weapons. They are not used "to cast at or strike another." Rather, an LCM is "merely attached to a firearm in order to modify the firearm's capacity 'to cast at . . . another' without reloading . . . ." <u>Gator's Custom Guns</u>, 568 P.3d at 284; <u>see</u> <u>Duncan</u>, 133 F.4th at 867 ("A[n LCM] is a box that, by itself, is harmless. . . . Without an accompanying firearm, [an LCM] is benign, useless in combat for either offense or defense."); <u>Brumback</u>, 2023 WL 6221425, at *8 ("On its own, [an LCM] cannot be used to attack or defend; a magazine with increased capacity simply reduces the frequency of reloads required when discharging a firearm.").

Moreover, LCMs are not like bullets, or even magazines in general, for purposes of making a firearm function. While magazines may be necessary to render some firearms operable, "LCMs, as a subset of magazines, are never necessary to render firearms operable. A firearm is not useless without an LCM because magazine capacity is not a determining factor in the operability of a firearm." <u>Kotek</u>, 682 F. Supp. 3d at 913; <u>see</u> <u>Duncan</u>, 133 F.4th at 868 ("[An LCM] is not necessary to operate any firearm. . . . [F]irearms that accept magazines operate as intended when equipped with magazines containing ten or fewer rounds."); <u>Gator's Custom Guns</u>, 586 P.3d at 285 ("[S]ome firearms may require a magazine to function as intended, but there are no firearms that require an LCM to function. This is unlike ammunition, which is an integral component of a firearm because ammunition is necessary for a firearm to function as intended . . . ."). By restricting only magazines that can hold more than

14

ten rounds and be used with a pistol, HRS § 134-8(c) regulates only the maximum capacity of magazines, leaving the pistol fully functional for its intended purpose. This restriction does not render the right to bear arms in self-defense "meaningless" or otherwise strike at the core Second Amendment right.

To the extent Bibbs claims that an LCM is essential to the function of the pistol he possessed or pistols more generally, he presented no evidence to support that assertion. See Brumback, 2023 WL 6221425, at *8 ("Plaintiffs have offered insufficient evidence suggesting that the text of the Second Amendment was meant to include large capacity magazines.") In short, Bibbs has failed to meet his burden of establishing that the Second Amendment's plain text encompasses the right to possess the prohibited LCM.

Given our conclusion, we need not reach what appear to be Bibbs's arguments that magazines in general and LCMs in particular are in "common use" today for self-defense.[10] See Duncan, 133 F.4th at 865-66. And because Bibbs has not carried his burden of establishing that his conduct was protected by the Second Amendment's text, we need not embark on the second step of the Bruen framework — whether HRS § 134-8(c) is consistent with the Nation's historical tradition of firearm regulation.

Bibbs has failed to show that his possession of the prohibited LCM was constitutionally protected. We therefore conclude that the Circuit Court did not err in denying Bibbs's motion to set aside his convictions, and did not abuse its discretion in denying his alternative motion for a new trial, on that basis.

## B. There was Probable Cause to Support the Search Warrant

Bibbs contends that the Circuit Court erred in denying his motion to suppress the evidence, i.e., the firearms and magazines, recovered from his home pursuant to the search warrant. He argues that he was "exercising his constitutional right to bear arms at his home for self-protection," and that

---

[10] In any event, Bibbs has presented no evidence that LCMs are commonly used for such a purpose.

"'[b]ut for' the protected conduct, police had no probable cause for a search and seizure."  He also appears to argue that his acquittal on Count 1 for terroristic threatening negated any probable cause to arrest him and obtain the search warrant.

As the State points out in its answering brief, there is a "threshold problem" with Bibbs's challenge to the search warrant.  "Generally, all data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath."  Detroy, 102 Hawaiʻi at 18, 72 P.3d at 490 (brackets and internal quotation marks omitted) (quoting State v. Navas, 81 Hawaiʻi 29, 34, 911 P.2d 1101, 1106 (App. 1995)).  Although Officer Matsuo testified below that he prepared and submitted his affidavit to obtain the search warrant, Bibbs did not include the affidavit with his motion to suppress, it does not appear to be part of the record, and Bibbs does not address any alleged deficiencies of the affidavit in his opening brief.  We cannot conduct the required *de novo* review (see supra), where the information in the affidavit that was relied on in issuing the search warrant is not part of the record.  See Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 230, 909 P.2d 553, 558 (1995) ("The burden is upon appellant in an appeal to show error by reference to matters in the record . . . ." (quoting Union Bldg. Materials Corp. v. The Kakaako Corp., 5 Haw. App. 146, 151, 682 P.2d 82, 87 (1984))); State v. Murphy, 59 Haw. 1, 5 n.3, 575 P.2d 448, 452 n.3 (1978).  For this reason alone, we must reject Bibbs's argument that there was no probable cause to support the search warrant.

In any event, Bibbs's probable cause argument appears to rest on two false premises – that his acquittal on Count 1 negated any probable cause to support his arrest or the search warrant, and the same acquittal sanctioned his use of a firearm in these circumstances as constitutionally protected conduct.  Bibbs offers no authority to support either proposition, and we have found none.  "Probable cause exists when facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an

offense has been committed." Detroy, 102 Hawaiʻi at 18, 72 P.3d at 490 (quoting State v. Navas, 81 Hawaiʻi 113, 116, 913 P.2d 39, 42 (1996)). Conviction of an offense, on the other hand, requires proof beyond a reasonable doubt. Bibbs's acquittal on Count 1 therefore does not mean that there was no probable cause to support his arrest or the search warrant. Similarly, the acquittal does not equate to a finding of factual innocence or a determination that Bibbs's use of a firearm in these circumstances was constitutionally protected conduct. These are the only arguments Bibbs makes on the probable cause issue, and they both lack merit.

Accordingly, we conclude that the Circuit Court did not err in denying the motion to suppress.

## C. The Circuit Court Should Have Given a Merger Instruction

Although not raised as an issue on appeal, we note that in addition to his convictions in Counts 4 and 5 for violations of HRS § 134-2, Bibbs was convicted in Count 7 of possessing a prohibited detachable ammunition magazine — specifically, a magazine containing 17 rounds of ammunition — in violation of HRS § 134-8(c) (a misdemeanor), and in Count 6 of possessing the same magazine while inserted into a pistol, in violation of HRS § 134-8 (c) and (d) (a Class C felony). "Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." State v. Martin, 146 Hawaiʻi 365, 389, 463 P.3d 1022, 1046 (2020) (noticing plain error as to the lack of a merger instruction on certain firearms convictions).

HRS § 701-109 (2014) states, in relevant part:

> (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:
>
> > (a) One offense is included in the other, as defined in subsection (4) of this section[.]

An offense is so included when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" HRS § 701-109(4)(a).

17

In light of HRS § 701-109 and <u>Martin</u>, we allowed the parties, pursuant to HRAP Rule 28(b)(4), to file supplemental briefs as to whether Bibbs was entitled to a merger instruction on Counts 6 and 7 and, if so, what the remedy is in these circumstances for the court's failure to give such an instruction. Both parties filed supplemental briefs. The State acknowledged that the jury should have been given a merger instruction as to counts 6 and 7 because "the felony version of HRS § 134-8(c) differs from the misdemeanor version" only in that the felony version requires proof of "an additional element, i.e., that the prohibited magazine be inserted into a pistol." Bibbs reached the same conclusion. As to the proper remedy, the State contended based on the rulings in <u>Martin</u> and <u>State v. Padilla</u>, 114 Hawaiʻi 507, 164 P.3d 765 (App. 2007), that it should have the option of retrying Bibbs on Counts 6 and 7 with an appropriate merger instruction, or dismissing one of the two counts and maintaining the conviction and sentence on the other count. Bibbs agreed.

We conclude that Bibbs was entitled to a merger instruction on Counts 6 and 7. The same conduct of Bibbs – *i.e.*, possessing a detachable ammunition magazine containing 17 rounds that was capable of use with a pistol, while that magazine was inserted into a pistol — may establish violations of HRS § 134-8(c) and (d). The violation of section 134-8(c) can be established by proof of the same facts required to establish the violation of section 134-8(d), which also requires proof that the prohibited magazine be inserted into a pistol. The Circuit Court's failure to give the jury a merger instruction in these circumstances was prejudicial and plainly erroneous.

Although there was no merger instruction, as in <u>Martin</u>, a new trial on Counts 6 and 7 is not required. Pursuant to <u>Martin</u> and <u>Padilla</u>, the State has the option of dismissing one of the two counts and maintaining the Judgment of Conviction and Sentence on one charge.[11] See <u>Martin</u>, 146 Hawaiʻi at 391, 463

_____

[11] As noted above, the Circuit Court sentenced Bibbs to one year of probation on Count 7 and four years of probation on Count 6, with these terms to run concurrently. Thus, the lack of a merger instruction does not affect the maximum sentence for Bibbs's conviction on these two charges.

18

P.3d at 1048 (citing <u>Padilla</u>, 114 Hawaiʻi at 517, 164 P.3d at 775).

## IV. Conclusion

For the reasons discussed above, Counts 6 and 7 are remanded to the Circuit Court for further proceedings consistent with this opinion.  We otherwise affirm the "Judgment; Conviction and Probation Sentence; Terms and Conditions of Probation; Notice of Entry" entered on December 14, 2022, in the Circuit Court of the Second Circuit.


On the briefs:

Gerald T. Johnson                    /s/ Karen T. Nakasone
for Defendant-Appellant         Chief Judge

Richard B. Rost,
Deputy Prosecuting Attorney,    /s/ Clyde J. Wadsworth
County of Maui,                       Associate Judge
for Plaintiff-Appellee

Kalikoʻonālani D. Fernandes,    /s/ Sonja M.P. McCullen
Solicitor General, and            Associate Judge
Ewan C. Rayner,
Deputy Solicitor General,
for Amicus Curiae
Attorney General,
State of Hawaiʻi